**Thomas O. ROGERS, Plaintiff-Appellee,**

v.

**UNITED SERVICE AUTOMOBILE AS-SOCIATION, Defendant-Appellant.**

No. 18508.

United States Court of Appeals
Sixth Circuit.

May 13, 1969.

Fred H. Cagle, Jr., Knoxville, Tenn., for appellant; Frantz, McConnell & Seymour, Knoxville, Tenn., of counsel.

Calvin N. Taylor, Knoxville, Tenn., for appellee; Cheek, Taylor & Groover, Knoxville, Tenn., of counsel.

Before O'SULLIVAN and COMBS, Circuit Judges, and KENT, District Judge.

O'SULLIVAN, Circuit Judge.

We consider the appeal of the United Services Automobile Association from a $10,000 judgment against it in favor of appellee Thomas O. Rogers. This, a diversity action, was tried to a jury in the United States District Court for the Eastern District of Tennessee. It was brought upon an automobile liability policy issued to appellee Rogers by United Services, in which policy the insurance company agreed to pay to Rogers the amount, not to exceed $10,000, which

Rogers would be legally entitled to recover from an uninsured motorist should he suffer injuries in an automobile accident. Plaintiff sued an uninsured motorist, who in turn sued Rogers, both claiming damages from the other arising from an automobile collision. These suits were brought in a Tennessee state court. Without waiting for adjudication of either of these state court actions, Rogers sued the insurance company directly in the United States District Court, charging that "the matter in controversy" exceeded $10,000 because of Rogers' entitlement to a penalty of 25% for the insurance company's alleged delay in settling his claim. Under proper circumstances, such penalty is recoverable against an insurance company, which, in bad faith, fails to pay a claim. Tenn.Code Anno. § 56–1105. The jury awarded plaintiff $12,500 which was reduced to $10,000 upon the District Judge's exoneration of the insurance company of any bad faith.

We reverse.

After setting out the right of an insured to be paid for a tort committed against him by an uninsured motorist, the involved policy contained the following:

"provided, for the purpose of this coverage, determination as to whether the insured or such representative is legally entitled to recover such damages, and if so the amount thereof, shall be made by agreement between the insured or such representative and the company, or if they fail to agree, by arbitration.

"No judgment against any person or organization alleged to be legally responsible for the bodily injury shall be conclusive, as between the insured and the company, of the issues of liability of such person or organization or of the amount of damages to which the insured is legally entitled unless such judgment is entered pursuant to an action prosecuted by the insured with the written consent of the company.

\* \* \* \* \* \*

"Arbitration. If any person making claim hereunder and the company do not agree that such person is legally entitled to recover damages from the owner or operator of an uninsured automobile because of bodily injury to the insured, or do not agree as to the amount of payment which may be owing under this Part, then, upon written demand of either, the matter or matters upon which such person and the company do not agree shall be settled by arbitration in accordance with the rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof."

On June 4, 1966, plaintiff was injured when his automobile came into collision with one driven by the uninsured, Ogle. Rogers made a report of the injury to Crawford & Company of Knoxville, adjusters and representatives of the insurance company, who then carried on investigation procedures. Investigation disclosed that the respective motorists, Rogers and Ogle, each claimed the other was at fault. Ogle's version was supported by a disinterested young man who claimed to be an eye witness, and by Ogle's wife who was a passenger in the front seat of Ogle's car. Another disinterested witness substantially supported Rogers' claim. Continued efforts failed to locate another person rumored to have been an eye witness. Neither driver claimed that his view of the approach of the other was in any way impaired.

The adjusters checked Ogle's claims and obtained reports from Rogers as to the progress of his recovery and reports from the several doctors attending him. He had returned to work, but asserted that his injuries required some interruptions of his working. The adjusters also investigated the claims of injuries by the Ogles. On October 18, 1966, a Knoxville attorney, retained by the Ogles, wrote a letter to the adjusters asserting Rogers' liability and describing injures allegedly

suffered by Ogle, his wife and infant child. The letter proposed the sum of $10,000 would be accepted from United Services in discharge of Rogers' liability to the Ogles. United Services' policy insured Rogers up to $100,000 against any liability that might accrue to him for the involved accident. Rogers at no time prior to February 16, 1967, evidenced any dissatisfaction with the way the matter was being handled by the insurance company and at trial conceded that the adjusters had handled the entire matter with diligence.

On February 16, 1967, Rogers wrote a letter to the insurance company at its home office at San Antonio, Texas, with copy to Crawford & Company, presenting his claim for $10,000 under the uninsured motorist's provision of his policy. The letter contained the following.

"Under coverage J of my policy, I herewith submit claim for $10,000.00. Attached is detailed documentation of expenses and related basis for the claim.

"It is my understanding that you only have one year under Tennessee law to bring an action in a matter of this kind. And from reading my policy I have learned that I have to have your written consent to bring any action. It is also my impression that this matter could be arbitrated and I would very much appreciate it if you would advise me whether this should be arbitrated, or in the alternative, give me your written consent to hire a lawyer and bring suit.

"Of course, I feel confident you will want to settle this with me and I only mention this because of the require-

ments set out in the policy and also because of the time element involved. I would appreciate hearing from you at your convenience regarding this matter."

Having received no response to his letter,[1] on March 16, 1967, Rogers went to the office of Crawford & Company for an explanation. Crawford & Company called John W. Carl, senior claims examiner of United Services, who explained to Rogers why the insurance company could not then pay his claim. Rogers made no demand, written or oral, for arbitration and was told on several occasions that he had the insurance company's consent to sue the Ogles to determine Ogle's liability and the extent of Rogers' recoverable damages.[2]

On April 10, 1967, Rogers brought suit against Ogle in the Circuit Court for Knox County, Tennessee, for recovery of $50,000 damages allegedly suffered in the June accident. Thereafter, three suits were brought against Rogers, one by Ogle for $10,000 one by Ogle's wife for $10,000 and one by Ogle as next friend of his infant son for $25,000. These charged Rogers with responsibility for the accident and for the damages suffered by the Ogles. These also were brought in the Circuit Court for Knox County, Tennessee. We have not been advised as to the status of these state court lawsuits.

On May 9, 1967, complaint in this lawsuit was filed in the United States District Court. Rogers sought to recover $10,000, the limit of permissible recovery against an uninsured motorist, and $2,500 penalty under T.C.A. § 56–1105 because of the insurance company's alleged

---

1. John W. Carl, senior claims examiner at the home office of the company, testified that Rogers' February 16th letter reached his desk after some delay, and some changes in their office organization delayed his answering it, but that on March 16 he talked with Rogers and fully explained the insurance company's position.

2. Rogers' account of the March 16, 1967, conversation included the following:

"Mr. Carl [of home office] and Mr. Ripley [of Crawford & Company] led me to believe that because of the unusual nature of this coverage that they were just not going to do anything with it, and that the burden was on me to take this to court and get a judgment and then they would pay because they had to."

*bad faith.* After charging Ogle with negligence and asserting his own freedom from negligence and the damages suffered, he averred:

"that on February 16, 1967, by letter to the defendant, complete details setting out his injuries and damages were forwarded to the defendant at its offices in San Antonio, Texas, and that at said time the complainant, in accordance with the terms of the policy asked that he be given permission to sue the third party and also asked if his claim could not be arbitrated within the terms of the policy.

"Complainant avers that to the date of the filing of this complaint the defendant, without just cause, has failed, refused and neglected to answer his correspondence, and has failed, refused and neglected to advise him as to whether or not he could bring suit against the third party or whether or not his claim could be arbitrated as set out in Coverage "J", Part IV, of the policy of insurance. Complainant avers that due to the defendant's disregarding his correspondence that he had to retain legal counsel at his personal expense, and consequently, sues for the 25% statutory penalty as set out in Tennessee Code Annotated Section 56–1105. Complainant avers that he waited the 60-day period before bringing this suit as required by said statute. Complainant avers that the failure of the defendant company to in any way advise him of his request for arbitration or written authorization to bring suit and the expenses incurred as a result thereof constitutes bad faith of the defendant entitling him to the penalty sued for."

On July 28, 1967, appellant insurance company's Knoxville attorney wrote to plaintiff's attorney advising of United Services' consent to Rogers' state court suit against the Ogles, and:

"that United Services agrees that the judgment in that case will be conclusive, as between it and Thomas O. Rogers, of the issues of liability and the amount of damages to which Thomas O. Rogers is legally entitled, subject to the limits of its policy applicable to Part IV."

On August 2, 1967, plaintiff's attorney replied that "the written consent provided for * * * has come a little late," and that Rogers was going ahead to prosecute this District Court action against United Services. On that same date United Services filed a Motion to Dismiss or for a Summary Judgment which, with other grounds, averred:

"4. The plaintiff does not have a cause of action under the uninsured motorist provision of his insurance policy against the defendant until he has established the liability of the uninsured motorist by obtaining a judgment against him, the defendant having given written consent to the prosecution of an action against the uninsured motorist as shown by a letter dated July 28, 1967 from Fred H. Cagle, Jr., attorney for the defendant, United Services Automobile Association, to Calvin N. Taylor, attorney for the plaintiff, Thomas O. Rogers, copy of which is attached hereto as Exhibit 'E'."

Charging that the $2,500 penalty was not a recoverable item, the motion further asserted that the amount in controversy did not exceed the sum of $10,000 as required by 28 U.S.C. § 1332. This motion was denied "without prejudice to renew at pre-trial or at the trial on the merits." Thereupon, defendant answered, repeating the foregoing defenses. Defendant's motions were renewed on October 24, 1966, and denied on October 25, 1966. After discussing the jurisdictional question, the District Judge's memorandum said:

"It is asserted in the third ground of the motion that there is a prior suit pending in the Circuit Court for Knox County in which Thomas O. Rogers has brought a tort action against David Ogle for his personal injuries arising out of the accident which is the subject of this suit. This does not justify the

dismissal of the present suit. The Court at most could abate the present suit until the state court action is determined.

"The fourth and final ground asserts that under the uninsured motorist provision of the insurance policy, plaintiff must establish liability against Ogle by obtaining a judgment against him before he can proceed against defendant. This contention was decided adversely to the contention of the defendant by this Court in the case of John Hickey, III v. Insurance Company of North America, 239 F.Supp. 109."

The case went to trial before a jury. Plaintiff's evidence consisted of the facts of the accident and Rogers' dealings with the defendant insurance company, all substantially as recited hereinabove. We have studied plaintiff's pleading, his counsel's opening statement to the jury, and his proofs in an attempt to glean therefrom his theory of a cause of action. We conclude that plaintiff's theory must have been that defendant's delay in answering his letter of February 16, 1967, its original giving of only oral consent to Rogers' state court suit against Ogle, and the failure of the parties to come to an agreement on arbitration, allowed him to ignore the provisions of the policy, his pending state court suit against the Ogles and their countersuit against him, and directly sue the insurance company in the United States District Court. The jury gave plaintiff the full amount of the coverage of the policy, $10,000, and the "bad faith" penalty of $2,500. The defendant insurance company moved for directed verdict and for judgment notwithstanding the verdict. These motions were denied, except that upon the latter motion, the District Judge reduced the judgment to $10,000 by eliminating the $2,500 penalty. He concluded "we do not believe that the proof showed a sufficient amount of bad faith [on the part of the insurance company] to permit the penalty."

Appellant United Services asserts two grounds for reversal: *First,* that the amount in controversy was not sufficient for federal jurisdiction. *Second,* that plaintiff had no cause of action.

### 1. Jurisdiction.

■ The District Judge correctly ruled that the amount "in controversy" was in excess of $10,000, within the meaning of 28 U.S.C. § 1332. Even though we find that plaintiff had no cause of action, we cannot say that Rogers and his attorney were guilty of bad faith in seeking damages in the amount of $10,000 and claiming that the conduct of the insurance company in not paying the amount claimed evidenced bad faith under T.C.A. § 56–1105. Plaintiff's theories of a cause of action may not have been sound, but they were pressed in good faith and his claim for damages of $10,000 and for the penalty of $2,500 together constituted a controversy in excess of $10,000. We have so recently expressed our views on this subject that we will content ourselves with citing our decision in Lewis v. Cook, 409 F.2d 619, (1969).

### 2. Plaintiff had no cause of action.

■ In finding that plaintiff, contrary to United Services' contention, could bring this action against the insurance company without first demanding and being refused arbitration, and without first establishing liability of an uninsured motorist, the District Judge said:

"This contention was decided adversely to the contention of the defendant by this Court in the case of John Hickey III v. Insurance Company of North America, 239 F.Supp. 109."

We have examined *Hickey* and the case of Wortman v. Safeco Ins. Co., 227 F. Supp. 468 (E.D.Ark.1963), the decision relied upon in *Hickey,* and find them both distinguishable from the case before us. In both *Hickey* and *Wortman,* by reason of the facts and applicable law, arbitration could not have been had. Such is not the case here. Also, in neither of the

two cited cases was there remaining, undetermined, an uninsured motorist's claim of damages against the insurance company's insured.[3]  In *Wortman* the Arkansas District Judge found a pragmatic and quite interesting solution to the case:

> "The defendant, insurer, contends that the damages to which plaintiff is entitled, if any, have not been determined, and that such determination is a prerequisite to the bringing of the instant action.

> "The provisions of the contract itself refute this contention.  Arbitration is the device designated by the parties to determine whether the insured is legally entitled to damages from the uninsured motorist.  Since arbitration is impossible in Arkansas, some other method must be used to determine whether the uninsured motorist is legally liable to the insured.  The plaintiff, insured, has alleged facts sufficient to sustain a finding that the said insured is legally entitled to damages against the uninsured motorist.  I see no reason why this court cannot make this determination as well as an arbitrator."  227 F.Supp. at 470–471.

In the *Hickey* case, the District Judge, after setting out language from *Wortman* which concluded that "the Court, in effect, becomes the arbitrator," said:

> "This Court concurs in that view. Wortman v. Safeco Ins. Company of America, D.C., 227 F.Supp. 468, at page 471."

If *Wortman* or *Hickey* could be considered to have any precedential relevance here, we respectfully decline to follow them.  In the present case, the insurance company was entitled to have its liability determined by arbitration or by having Rogers' action against the uninsured motorist prosecuted to judgment.

We conclude that plaintiff did not make out a case against defendant-appellant.

3.  We pass the question whether a judgment for Rogers in this case could be pleaded as res judicata of the Ogles'

If, of course, plaintiff prosecutes to a favorable judgment his state court suit against the uninsured motorist Ogle, the insurance company will be required to pay such judgment within the applicable limits of its policy.

The judgment of the District Court is reversed, with direction to dismiss the plaintiff's complaint.

claims against him.  None of them were parties to this case.