**Henry B. LOGAN, as Father and Next Friend of Sean Patrick Logan, a Minor, Plaintiff,**

**v.**

**The AETNA CASUALTY AND SURETY COMPANY and American Mutual Insurance Company, Defendants.**

**Civ. A. No. 3842.**

United States District Court,
S. D. Mississippi, S. D.

Feb. 6, 1970.

Floyd J. Logan, Gulfport, Miss., for plaintiff.

Rae Bryant, Gulfport, Miss., for Aetna Cas. & Sur. Co.

D. Knox White, Gulfport, Miss., for American Mut. Ins. Co.

NIXON, District Judge.

This cause is before the Court on Motions to Dismiss filed by the defendants, Aetna Casualty and Surety Company and American Mutual Insurance Company. The plaintiff, Henry B. Logan, brought this action directly against the defendants under the uninsured motorist provisions of his insurance policies on behalf of his minor son, Sean Patrick Logan, who was injured when struck by an allegedly uninsured vehicle owned by Gustave D. Thomas and being driven by his wife, Ruby F. Thomas. The vehicle will be considered to have been uninsured at the time of the accident for the purposes of this motion. The plaintiff is a resident of the State of Mississippi and the defendants are foreign corporations authorized to transact business as insurance companies in the State of Mississippi.

The question before this Court is whether a party injured by an uninsured motorist can maintain an action against his own insurance carrier, without first bringing suit against the uninsured motorist in order to establish his legal liability, if any, to the insured.

Section 8285–51, Mississippi Code of 1942, Annotated, provides that every policy of automobile insurance issued after January 1, 1967, must, unless specifically waived by the insured, contain provisions "undertaking to pay the insured all sums which he shall be legally entitled to recover as damages for bodily injury or death from the owner or operator of an uninsured vehicle." In compliance with this section, each of the insurance policies include the following appropriate provisions

> "AETNA CASUALTY will pay all sums which the Insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured highway vehicle because of bodily injury sustained by the Insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured highway vehicle; * * * "

> "The company (American Mutual) will pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury, * * * sustained by the insured, and caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile; * * * "

Both insurance policies also provide for binding arbitration to resolve differences in the event that the parties are unable to agree on the legal liability of the uninsured motorist or the amount owing under the coverage. Compulsory arbitration in Mississippi is prohibited, however, by Section 8285–55, Mississippi Code of 1942, Annotated, which provides:

> "No such endorsement or provisions shall contain a provision requiring arbitration of any claim arising under any such endorsement or provisions. The insured shall not be restricted or prevented in any manner from employing legal counsel or instituting or prosecuting to judgment legal proceedings, but the insured may be required to establish legal liability of the uninsured owner or operator."

The language found in both insurance policies and Section 8285–51 of the Mississippi Code, by which the companies agreed to pay all sums which the insured *"shall be legally entitled to recover"* (emphasis supplied) does indicate to this Court that, absent agreement between the insured and his carrier, the establishment of the legal liability of the uninsured motorist by proceedings in which the uninsured motorist is a party is a prerequisite to recovery from the insurance carriers under the terms of the policies. In State Farm Mutual Automobile Insurance Company v. Girtman, 113 Ga.App. 54, 147 S.E.2d 364 (1966), the Georgia Court, in considering a similar statutory language, stated:

> "Legal liability means, with respect to insurance contracts, a liability which the courts of justice will enforce as

between parties litigant, Abbott v. Aetna Cas. & Surety Co., D.C. Maryland, 42 F.Supp. 793, 806; Globe & Republic Ins. Co. v. Independent Trucking Co., Okl., 387 P.2d 644, 646. Substantially to the same effect see the ruling of the Supreme Court in Arnold v. Walton, 205 Ga. 606, 611, 54 S.E.2d 424. It is fundamental that the legal liability of one person to another can be ascertained only in an action brought against such person by the other in a court of competent jurisdiction. Code § 110–501. No mere action against the insurance company to which the known uninsured motorist is not a party and in which he could not be made a party (Arnold v. Walton, supra) could adjudicate this question so as to affect the legal liability of the uninsured motorist to the insured."

The language of Section 8285–55, supra, further strengthens this interpretation by providing that even though compulsory arbitration is prohibited and the enforcement of a "consent to sue" clause is not allowed in that "the insured shall not be restricted or prevented in any manner from employing legal counsel or instituting or prosecuting to judgment legal proceedings", the insured still "may be required to establish legal liability of the uninsured owner or operator."

The position of the plaintiff is certainly supported by two recent United States District Court decisions in which it was determined that the insured could maintain an action against his insurer without first having established the legal liability of the uninsured motorist by prior suit. In Wortman v. Safeco Insurance Company of America, 227 F. Supp. 468 (E.D.Ark.1963), the Court, having noted that the arbitration clause of the insurance policy considered therein was void and unenforceable under Arkansas law, stated:

"The defendant, insurer, contends that the damages to which plaintiff is entitled, if any, have not been determined, and that such determination is a pre-requisite to the bringing of the instant action.

"The provisions of the contract itself refute this contention. Arbitration is the device designated by the parties to determine whether the insured is legally entitled to damages from the uninsured motorist. Since arbitration is impossible in Arkansas, some other method must be used to determine whether the uninsured motorist is legally liable to the insured. The plaintiff, insured, has alleged facts sufficient to sustain a finding that the said insured is legally entitled to damages against the uninsured motorist. I see no reason why this court cannot make this determination as well as an arbitrator.

"Aside from the arbitration clause, I can find nothing in the contract which precludes the plaintiff from bringing this action. In fact, since the insured cannot be made to arbitrate, and the contract suggests that the intention of the parties is to determine the issues between themselves, it appears to the court that the intentions of the parties will best be served by an action in a court of law by the insured against the insurer; the court, in effect becomes the arbitrator."

In Hickey v. Insurance Company of North America, 239 F.Supp. 109 (E.D. Tenn., 1965), the court, after determining that the insured's minority status rendered the arbitration provision of the policy unenforceable under Tennessee law, merely concurred with the reasoning and decision of the court in *Wortman, supra*.

The weight to be accorded these two decisions is rendered somewhat unclear by the case of Rogers v. United Services Automobile Association, 410 F.2d 598 (C.A. 6, 1969). In reversing the decision of the lower court which had resulted in a verdict in favor of the insured in a suit brought directly against the insurance carrier, the Court of Appeals went to great lengths in an attempt to distinguish the case from *Wortman* and

*Hickey.* Initially, the court noted that the arbitration clause of the policy was not unenforceable under Tennessee law as was the case in *Hickey* where the insured was a minor, and in *Wortman,* where Arkansas law prohibited compulsory arbitration. Secondly, the insured in *Rogers* had filed suit in state court against the uninsured motorist but the suit had not been prosecuted to judgment. Furthermore, the uninsured motorist and two members of his family had filed suits against the insured in state court and these actions were still pending. Neither of these two distinguishing factors are present in the case before this Court.

After distinguishing these two cases, however, the Court in *Rogers* further stated:

> "If *Wortman* and *Hickey* could be considered to have any precedential relevance here, we respectfully decline to follow them. In the present case, the insurance company was entitled to have its liability determined by arbitration or by having Rogers' action against the uninsured motorist prosecuted to judgment.

> "We conclude that plaintiff did not make out a case against defendant-appellant. If, of course, plaintiff prosecutes to a favorable judgment his state court suit against the uninsured motorist Ogle, the insurance company will be required to pay such judgment within the applicable limits of its policy.

> "The judgment of the District Court is reversed, with direction to dismiss the plaintiff's complaint."

■ This Court is of the opinion that the case now under consideration is indistinguishable from the cases of *Wortman* and *Hickey.* The arbitration clause of the plaintiff's insurance policy is unenforceable under Mississippi law. There has been no suit instigated against the uninsured motorist nor is an action by the uninsured motorist against the insured still pending in state court. Furthermore, the policy provision by which the insurers agreed to pay all sums which the insured "shall be legally entitled to recover as damages" is identical to the policy provision considered by the court in *Wortman, supra.* This Court, however, is not bound by the decisions of these two District Courts nor by the holding in *Rogers* and the effect, if any, it has on *Wortman* and *Hickey.*

By far the strongest argument against allowing this direct action by the insured in which the uninsured motorist is not a party and thus not bound by any determination of this Court concerning his legal liability is the possibility of the trier of fact in a subsequent subrogation suit by the insurer reaching an entirely different conclusion as to the legal liability of the uninsured motorist or the amount of damages for which he is liable. If the insured herein is successful in this prosecution but the insurers are unsuccessful in a subsequent suit against the uninsured motorist, there is no provision to require the insured to return to the insurance companies the monies awarded in this suit. On the other hand, if the insured is unsuccessful in establishing the legal liability of the uninsured motorist in this suit, there is nothing to prevent a suit by the insured against the uninsured motorist. If successful in his subsequent suit, the insured would be in the peculiar position of having established the legal liability of the uninsured motorist and thus entitled to payment under the provisions of the policy, but in all probability unable to collect, the nonliability of the uninsured motorist having already been determined by the prior suit against the insurance carriers. The question of the legal liability of the uninsured motorist should not be subject to possible conflicting determinations in two separate suits, particularly when such a procedure is not only unnecessary but could in fact prejudice the rights of both parties. This possibility of conflicting determinations or a variance in the amounts awarded is greatly enhanced by this jurisdiction's utilization of the comparative negligence doctrine.

In State Farm Mutual Insurance Company v. Girtman, 113 Ga.App. 54, 147 S.E.2d 364 (1966), the court, in considering this same issue, stated:

"Our conclusion in this regard is further strengthened by the provisions of the Act which grant to the insurance company the right to be subrogated to the rights of its insured against such uninsured motorist after it has paid a claim arising under this law. If the contention of the appellee that the legal liability of the uninsured motorist to her could be adjudicated in this action should be upheld, then the long standing principles respecting the conclusiveness of judgments, that is, that judgments shall be conclusive and binding only as between the parties and their privies, would have to be violated, or else the right granted to the insurance company by the law, to be subrogated to the claim of its insured against such uninsured motorist would be rendered ineffectual since the insurance company would be subjected to the risk of having to relitigate the issue of the uninsured motorist's liability before the same or a different tribunal under different circumstances with the attendant risk of a different conclusion as to the liability of the uninsured motorist being reached. We will not attribute to the legislature an intent to reach such an illogical or unjust result.

"We, therefore, conclude that it was the intent of the legislature that the legal liability of a known uninsured motorist to the insured should be ascertained in an approprirate forum before the bringing of a suit against the insurance company under such coverage. This conclusion works no great hardship on the insured because once a judgment has been obtained against the uninsured motorist, it would only be necessary to show that fact and to show the existence of coverage by the insurance company to entitle the insured to a judgment against the company. The petition in this case failed to show that suit had been brought against the uninsured motorist, or that a judgment had been recovered, and it was, therefore, subject to general demurrer. The court erred in overruling the defendant's general demurrer to the plaintiff's petition."

In Levy v. American Automobile Insurance Co., 31 Ill.App. 157, 175 N.E.2d 607 (1961), the defendant insurance company refused to grant its consent for the insured to sue the uninsured motorist. The court held that such denial had the effect of forcing the insured to arbitrate, and compulsory arbitration was forbidden under Illinois law. In answer to the defendants' argument that a direct action against the insurer was the proper procedure, the Court stated:

"The defendant's basic premise is that proof of a right to recover and the amount recoverable may be made in an action on the contract directly against the insurance company and that no other action is necessary or relevant. We are not informed as to how this could be, for the plaintiffs have no cause of action against the company on the policy endorsement until it is first determined that they are legally entitled to recover damages from the owner or operator of an uninsured automobile. Indeed, this argument is directly contrary to the express provisions of the endorsement, which provide that 'the determination as to whether the insured or such representative is legally entitled to recover such damages, and if so the amount thereof, shall be made by agreement between the insured or such representative and the Company, or if they fail to agree (and the insured so demands), by arbitration.'
"The parties failed to agree and the plaintiff's attorney declined to submit the dispute to arbitration. The only other recourse available was to obtain a judgment against the third party, * * * *"

The Mississippi Supreme Court has recently held that an insured may bring an action directly against his own insur-

er under the uninsured motorist provisions of his insurance policy. Hodges v. Canal Insurance Company, Miss., 223 So.2d 630 (1969). In this case, however, the insured brought suit not only against his own insurance carrier, but also against the tortfeasor who had allegedly absconded from the jurisdiction of the State of Mississippi and against the tortfeasor's insurers who had disclaimed coverage. If the determination of the legal liability of the uninsured motorist by an action against him was not possible in any court of this state, either because he was unknown, or known, but outside the jurisdiction of both the State and Federal Courts of Mississippi, this Court would not grant the defendants' motions for dismissal.

■ In this case, however, there is nothing to prevent the insured from maintaining an action against this uninsured motorist in state court. Upon establishing the legal liability of the uninsured motorist, the insurance companies would be required to pay such judgment within the applicable limits of the policies. The judgment recovered by the insured against the uninsured motorist would be binding on the insurers both as to liability and damages. Rogers v. United Services Automobile Association, *supra*; MFA Mutual Insurance Company v. Lovins, 248 F.Supp. 108 (E.D. Ark.1965).

The plaintiff persuasively argues that as the defendant insurers did contract to determine the "legal liability" of an uninsured motorist by a method other than a lawsuit against the uninsured motorist, i. e., the unenforceable arbitration agreement, any prejudice to the subrogation rights of the insurer occasioned by this Court acting, in effect, as an arbitrator, would be no different than if Mississippi law permitted arbitration. Furthermore, the Court by acting as arbitrator, would be actually carrying out the intent of the parties. This was the holding in *Wortman,* and *Hickey, supra.* This Court is of the opinion that the reasoning of these two cases should not be followed.

■ The Mississippi legislature has determined that compulsory arbitration agreements are unenforceable in the State of Mississippi. Undoubtedly the primary purpose of this statute was to require that the legal liability of an uninsured motorist, absent an agreement by the parties, be determined in a court of law. Perhaps another purpose for forbidding compulsory arbitration was the prevention of the unjust result which might be occasioned by two separate determinations as to the legal liability of the uninsured motorist and the amount of damages for which he is liable. In this Court's opinion, it was not the intent of the Mississippi legislature in prohibiting compulsory arbitration to merely shift the role of arbitrator to the court and thereby continue the possibility of the injustice and confusion which is possible when two different courts must decide the same issue.

■ The Courts should strive, whenever possible, to prevent a multiplicity of suits to determine the same issue especially when the possibility of different results under such procedure would prejudice the rights of either party.

Based upon the above, this Court finds and is of the opinion that the Motions of the defendants to Dismiss without prejudice should be granted. The defendants shall present their Orders to this Court in conformance with the foregoing opinion within the time and in the manner prescribed by the Rules.