**Paul LEE and Vivian Lee, Plaintiffs,**

v.

**ALLSTATE INSURANCE COMPANY, Defendant.**

**No. CV–R–85–560–ECR.**

United States District Court,
D. Nevada.

Nov. 20, 1986.

---

James M. Walsh, Reno, Nev., for plaintiffs.

Joseph J. Van Walraven, Reno, Nev., for defendant.

## ORDER

EDWARD C. REED, Jr., Chief Judge.

On June 24, 1984, while attending the Reno Rodeo, the plaintiffs were struck and injured by a vehicle owned and operated by James Thomas McNulty, who is not a party to the present action. At the time of the accident, the plaintiffs held a policy of insurance with the defendant which included uninsured motorist coverage.

In September of 1985, the plaintiffs brought the present action in the Nevada state district court. The defendant then removed the case to this Court. In this action, the plaintiffs assert that they are entitled to the proceeds of their uninsured motorists coverage under the policy with the defendant. Further, the plaintiffs contend that the defendant has engaged in various acts of bad faith in the negotiation and attempted settlement of their claims, and that they should therefore recover damages.

In May of 1986, the plaintiffs brought another cause of action in the Nevada state district court, naming as defendants James Thomas McNulty and the Reno Rodeo and Livestock Association. This suit attempts to establish the primary liability for the accident in 1984. Allstate has intervened in that action, but there has been no final disposition of the action as yet. The plaintiffs, however, have entered a default against James Thomas McNulty, although they have yet to reduce the default to judgment.

The defendant in this action, Allstate, now brings a motion for summary judgment pursuant to Fed.R.Civ.P. 56(b), arguing that Nevada law requires the plaintiff to sue and obtain a judgment against the uninsured motorist before they may proceed directly against their uninsured motorist insurance carrier. The plaintiffs oppose this motion contending that the relevant case law establishes the existence of such a direct action, and that there is no need to proceed first against the uninsured motorist. Neither of the parties has attached affidavits or exhibits which tend to

indicate the existence or non-existence of a genuine issue of material fact. In fact, it is clear this motion would more properly be styled as a motion to dismiss under Fed.R. Civ.P. 12(b)(6). In that this is the case, the Court will treat the current motion as a motion for dismissal, rather than a motion for summary judgment under Rule 56(b).

DISCUSSION

Nevada's uninsured motorist law provides in pertinent part that

> [n]o policy insuring against liability arising out of the ownership, maintenance or use of any motor vehicle may be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages, from owners or operators of uninsured or hit-and-run motor vehicles, for bodily injury, sickness or disease, including death, resulting from the ownership, maintenance or use of the uninsured or hit-and-run motor vehicle; but no such coverage is required in or supplemental to a policy issued to the State of Nevada or any political subdivision thereof, or where rejected in writing, on a form furnished by the insurer describing the coverage being rejected, by an insured named therein, or upon any renewal of such a policy unless the coverage is then requested in writing by the named insured. The coverage required in this section may be referred to as "uninsured vehicle coverage."

NRS § 690b.020.

The dispute in this case focuses on the language "legally entitled to recover" found in the statute. The defendant maintains that this phrase requires the plaintiffs to first sue the tortfeasor, and obtain a judgment from him before proceeding against its insurance carrier. The plaintiffs, on the other hand, contend that this phrase merely requires them to bear the burden of proof in establishing their entitlement to recover by virtue of the uninsured motorist's negligence. Under this construction, the plaintiffs could bring a direct action against the insurance carrier, as long as they could establish the liability of the tortfeasor.

Although a variety of Nevada cases have discussed the uninsured motorist provisions of the NRS, none has directly discussed the availability of the direct action under the statute. Where the state courts are silent on a matter, it is this Court's task to use its "own best judgment in predicting how the state's highest court would decide the case." *Fiorito Bros., Inc. v. Fruehauf Corp.*, 747 F.2d 1309, 1314 (9th Cir.1984) *quoting Takahashi v. Loomis Armored Car Service*, 625 F.2d 314, 316 (9th Cir. 1980). Other jurisdictions appear to be almost evenly divided on the direct action issue. The more persuasive of these opinions, however, indicate that the phrase "legally entitled" requires only that the plaintiff bear the burden of proof in the case, and that direct actions against insurance carriers are permissible. This fact, coupled with dicta from various Nevada Supreme Court rulings, indicate that the supreme court of this state, if presented with this question, would rule in favor of the direct action.

The seminal case discussing the availability of the direct action is *Winner v. Ratzlaff*, 211 Kan. 59, 505 P.2d 606 (1973). In that case, the plaintiff had brought an action against an uninsured motorist for wrongful death. Later, the plaintiff joined as a party defendant his uninsured motorist insurance carrier. Ultimately, a jury trial was held, in which no mention was made of the defendant insurer's presence in the suit. 505 P.2d at 608. The jury held that the defendant had not been negligent and that the plaintiff's decedent had been contributorily negligent in the case. The plaintiff appealed, contending that the prevailing procedure which required it to name the alleged tortfeasor and obtain judgment before proceeding against the insurance carrier was prejudicial to its case. Thus, the Supreme Court of Kansas was required

to determine whether direct actions against uninsured liability carriers were acceptable.

Initially, the court noted that the purpose of this legislation, which is identical to the Nevada statute, was to "provide recompense to innocent persons who are damaged through the wrongful conduct of motorists who, because they are uninsured and nòt financially responsible, cannot be made to respond in damages." *Id.* 505 P.2d at 610. The court stated further that this statute must be construed liberally so as to provide the protection intended by the remedial act. *Id.* In giving effect to the statute, the court here also focused on the language "legally entitled to recover," as have both parties in this case.

This language, found the court, means simply that the plaintiff must be able to establish liability on the part of the uninsured motorist which gives rise to damages. *Id.* In a direct action, this would require the plaintiff to bear the burden of proving that the other driver was uninsured, that he was legally liable for the damages incurred, and the amount of damages sustained. *Id.* Against this claim, the insurance carrier would have available all of the uninsured driver's substantive defenses, as well as all policy defenses available under the statute. *Id., citing* Cox, *Uninsured Motorist Coverage,* 34 Mo.L.Rev. 1, 34 (1969). In that multiple litigation could be avoided by allowing the direct action, the court concluded that it was not a prerequisite to recovery against the insurance carrier that judgment first be obtained against the uninsured driver. *Id.* 505 P.2d at 611; *see Van Hoozer v. Farmers Ins. Exchange,* 219 Kan. 595, 549 P.2d 1354 (1976).

Other courts have also interpreted the phrase "legally entitled to recover" to indicate merely that the plaintiff has the burden of proof in the direct action. *See State Farm Mutual Auto. Ins. Co., Inc. v. Griffin,* 51 Ala.App. 426, 286 So.2d 302 (1973); *Transnational Ins. Co. v. Simmons,* 19 Ariz.App. 354, 507 P.2d 693 (1973); *Lane v. State Farm Mutual Auto. Ins. Co.,* 209 Neb. 396, 308 N.W.2d 503 (1981); *Guess v.*

*Gulf Ins. Co.,* 96 N.M. 27, 627 P.2d 869 (1981). Other courts, while not discussing this particular phrase, have held that direct actions are generally available against the uninsured motorist liability carrier. *See Cline v. Aetna Ins. Co.,* 317 F.Supp. 1229 (S.D.Ala.1970) (applying Alabama law); *Cobb v. State Security Ins. Co.,* 576 S.W.2d 726 (Mo.1979) (plaintiff merely carries the burden of proof in the direct action); *Puckett v. Liberty Mutual Ins. Co.,* 477 S.W.2d 811 (Ky.1972) (in that the value of the claim against the uninsured driver is usually worthless, the insured party's right to sue will be placed above the dubious value of the insurer's right of subrogation); *Traveler's Indemnity Co. v. Mongiovi,* 135 N.J.Super. 452, 343 A.2d 750 (1975) (plaintiff must only demand payment and discover that other driver is uninsured in order to sue directly); *Associated Indemnity Corp. v. Cannon,* 536 P.2d 920 (Okl.1975) (*citing Winner v. Ratzlaff, supra* ); *and Wood v. Millers National Ins. Co.,* 96 N.M. 525, 632 P.2d 1163 (1981). *But see Logan v. Aetna Casualty & Surety Co.,* 309 F.Supp. 402 (S.D.Miss.1970); *Smith v. Phillips,* 172 Ga.App. 459, 323 S.E.2d 669 (1984); *Levy v. American Automobile Ins. Co.,* 31 Ill.App.2d 157, 175 N.E.2d 607 (1961); *Wheeler v. Hartford Accident & Indemnity Co.,* 560 S.W.2d 816 (Ky.1978); *Willard v. Aetna Casualty & Surety Co.,* 213 Va. 481, 193 S.E.2d 776 (1973).

Several recent pronouncements from the Nevada Supreme Court indicate that it would follow the *Winner* case if it were to decide this question. In *Ippolita v. Liberty Mutual Ins. Co.,* 101 Nev. 376, 705 P.2d 134 (1985), for example, the insured parties appealed a lower court's dismissal of a declaratory judgment action. When the Oppolito's had purchased their uninsured motorist policy, the protection which it accorded was $15,000 per person, $30,000 per accident. Thereafter, NRS § 687B.145(2) became effective, which required insurance carriers to offer uninsured motorist coverage equal to the insured's normal bodily injury limits. After the enactment of this provision, the Ippolito's son was killed in a

one-car accident, but the policy's $15,000 limit could not cover the actual wrongful death damages of $100,000. Because the policy predated the enactment of the new NRS section, the lower court apparently held that the higher limit requirements could not be applied. *Id.*

The Supreme Court of Nevada reversed the lower court. Initially, it noted that the provisions of the uninsured motorist statute were to be strictly construed in favor of recovery by the insured. 705 P.2d 1376, *citing State Farm Mutual Auto. Ins. Co. v. Hinkel*, 87 Nev. 478, 484, 488 P.2d 1151, 1153–54 (1971); *Allstate Ins. Co. v. Maglish*, 94 Nev. 699, 702, 586 P.2d 313, 314 (1978). Further, the court found, the requirements of this statute are implicitly a part of every insurance policy issued in the state, just as though it had been expressly written into the policy. *Id.* In view of the extreme liberality with which these statutes are construed in Nevada, the court had no difficulty in finding that the insurance carrier would be bound by the statute, even though this particular policy had been issued before the statute was enacted. *Id.*

It would thus appear, owing to the great deference which the Nevada Supreme Court pays to the insured party in these cases, that it would allow direct actions to lie against uninsured motorist liability carriers. Indeed, the supreme court has admitted such in dictum. In *Allstate Ins. Co. v. Pietrosh*, 85 Nev. 310, 454 P.2d 106 (1969), the insurance company brought an action for declaratory judgment, seeking to deny its liability on a judgment which the insured had already procured from the uninsured driver. The insured had sued and obtained the judgment from the tortfeasor without the permission of the insurance company, although the company had notice of the suit and was free to intervene. Because the insured had sued without permission in violation of contract, argued the company, the judgment was without effect. In holding that the company was liable for the judgment, the court noted that an insured who is injured by an uninsured driver has several options in Nevada. For example,

[h]e may settle his claim with his insurance company; settle with the uninsured motorist; arbitrate with his insurance company; *sue his insurance company;* sue the uninsured motorist; or sue both, joining them as codefendants.

*Id.* 454 P.2d at 108 (emphasis added). Further, the court noted in this case that multiple litigation was not desirable, and that duplicitous litigation was a possibility if the insured had to obtain permission to sue as this contract required. *Id.* 454 P.2d at 110. Therefore, the court held that the insurance company would be bound by the earlier judgment, and that permission to sue was not required.

▪ In view of Nevada's declared liberality toward insured parties in these cases, and in view of the fact that the supreme court of the state has recognized the direct action in dictum, this Court finds that Nevada courts would not require the plaintiff in this action to reduce his claim against the tortfeasor to judgment before bringing an action against the uninsured motorist liability carrier.

The defendant further claims, however, that the plaintiffs' bad faith claims must be dismissed, in that there can be no duty to settle the claim, and hence no bad faith, until the uninsured motorist's liability is established. In support of this argument, the defendant cites a succession of cases from other jurisdictions, including *Bowers v. State Farm Mutual Automobile Ins. Co.*, 460 So.2d 1288 (Ala.1984). It appears under Nevada law, however, that the defendant's assertion is incorrect.

In *Farmers Home Mutual Ins. Co. v. Fiscus*, 102 Nev.Adv.Op. 85, 725 P.2d 234 (1986), the plaintiffs brought a variety of claims, including one for breach of the implied duty of good faith and fair dealing, against its insurance carrier for damages sustained to their home when pipes burst inside their home. In early February, 1982, the plaintiffs reported their loss to the defendant, whereupon a claims adjuster was dispatched to survey the damage. On February 23, 1982, the defendant denied

liability, on the ground that the policy did not cover seepage of water which had occurred over a long period of time. In October, 1982, the plaintiff filed suit against the defendant, alleging breach of contract and breach of the covenant of good faith and fair dealing. After a bench trial, the district court found in favor of the plaintiffs on all counts. The defendants appealed, contending that there was insufficient evidence in the record from which to establish the bad faith claim.

The state supreme court disagreed. Farmers was liable for breach of the duty of good faith, the court found, "by the manner in which Farmers denied Fiscuses' claim without reasonable basis and by reason of the insurance company's unprofessional claims investigative procedures." *Id.*, 725 P.2d at 235, 236. Thus, the court found that there was ample evidence in the record to support the district court's finding of a breach of the duty of good faith. *Id. citing United States Fidelity v. Peterson,* 91 Nev. 617, 540 P.2d 1070 (1975).

■ The duty of good faith and fair dealing in Nevada thus does not come into existence upon the "establishment" of a claim by the insured. Rather, as the *Farmers* case indicates, the duty inheres to the contract of insurance itself, and exists long before the actual legal entitlement to recovery is established. Thus, in the present case, it is clear that the plaintiff need not wait until "legal entitlement" in order to establish a claim for bad faith. Rather, all he need show is that the insurer has breached his duty of reasonable negotiation and settlement of the claim. *Id., see Craft v. Economy Fire & Casualty Co.,* 572 F.2d 565 (7th Cir.1978); *Cancino v. Farmers Ins. Group,* 80 Cal.App.2d 335, 145 Cal.Rptr. 503 (1978).

In that the plaintiff correctly stated his claims in the present case, the motion to dismiss must be denied.

IT IS, THEREFORE, HEREBY ORDERED that the defendant's motion for summary judgment, which the Court has treated as a motion to dismiss, is DENIED.