**FIORITO BROS., INC.,**
**Plaintiff-Appellee,**

v.

**FRUEHAUF CORPORATION,**
**Defendant-Appellant.**

**No. 83-3983.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 2, 1984.

Decided Nov. 23, 1984.

**1310**

Richard M. Stanislaw, David H. Karlen, Oles, Morrison, Rinker, Stanislaw & Ashbaugh, Seattle, Wash., for plaintiff-appellee.

John A. Hackett, Hackett, Beecher, Hart, Branom, Vavrichek & Drury, Seattle, Wash., for defendant-appellant.

Before FERGUSON and NELSON, Circuit Judges, and JAMESON,[*] District Judge.

NELSON, Circuit Judge:

Defendant-appellant Fruehauf Corp., a Michigan corporation, appeals from a jury verdict of $130,000 in favor of plaintiff-appellee Fiorito Bros., Inc., a Washington corporation. Fruehauf claims that the trial court erred in drawing a number of legal conclusions concerning the nature of the warranties and disclaimers contained in the contract between the parties, and in framing its jury instructions. We affirm the district court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Fiorito, a heavy construction company, began negotiations in the Spring of 1977 with Fruehauf, a manufacturer of dump truck bodies, for the purchase of thirteen bodies to be installed on separately-purchased trucks. Fiorito uses dump trucks for, among other things, carrying wet concrete to highway construction sites. In pre-purchase negotiations, Fiorito informed Fruehauf of this contemplated use. Fruehauf admits that its representative told Fiorito that its truck bodies were suitable for carrying wet concrete. During pre-purchase negotiations Fruehauf also informed Fiorito that the bodies were covered under a five-year unconditional warranty and that the design of the bodies was unique. Fruehauf also gave Fiorito a sales brochure during this period which makes the same general claims.

---

* The Honorable William J. Jameson, Senior United States District Judge for the District of Montana, sitting by designation.

On March 14, 1977, Fruehauf gave Fiorito a written price quotation stating that each body would cost $5,262, and that each was covered by a five-year warranty. Later, Fruehauf lowered the price by $400 per body, and Fiorito agreed to purchase the thirteen bodies. On April 13, 1977, Fiorito signed a Fruehauf sales order, which sets forth on the reverse side a five-year warranty and a number of disclaimers.[1] The total purchase price was $66,619.12. The disclaimers on the sales order include statements that the sole remedy for the buyer is "repair or replacement," and that consequential damages are not available.

After the bodies had been installed and the trucks began to haul wet concrete, a number of problems with the bodies developed. The two major problems were that the sides of the bodies (the "dump boxes") bulged and bowed when filled with wet concrete and that the hydraulic hoists failed. Cracks and tears also developed in the corners and welds of the bodies. All thirteen trucks were affected.

Fiorito notified Fruehauf orally of these problems but received no response. Fiorito and Fruehauf also exchanged letters in 1977. A Fruehauf service manager came to Fiorito's shop, examined the bodies, and stated that they were not covered under warranty. After another similar visit from Fruehauf managers, Fiorito began repairing the bodies itself. Several letters were exchanged between the parties but Fruehauf continued to deny coverage.

Fiorito brought suit in the United States District Court for the Western District of Washington on September 2, 1980, seeking damages. Diversity of citizenship provided the basis for the court's jurisdiction under 28 U.S.C. § 1332(a). A jury trial was conducted in July, 1982, Hon. Walter T. McGovern presiding. Fiorito argued that the bodies had been improperly manufactured and that Fruehauf had failed to honor express and implied warranties. In defense, Fruehauf relied mainly on the disclaimers contained in the sales order. The jury returned a verdict for Fiorito, awarding $130,000 in damages. The court entered its judgment on July 23, 1982. Fruehauf's motion for a new trial was denied by order entered June 29, 1983.

Our jurisdiction over this appeal is based on 28 U.S.C. § 1291.

## ISSUES PRESENTED

I. Whether the trial court correctly ruled, as a matter of law, that (a) Fruehauf's limited "repair or replace" remedy failed of its essential purpose, and (b) under the circumstances of this case, failure of the limited remedy invalidated Fruehauf's disclaimer of consequential damages.

---

**1.** The reverse side of the Fruehauf sales order sets forth, among other things, the following conditions:

### WARRANTY

A. Except for tires, to which a separate tire warranty applies, the Fruehauf Distributing Company (Seller) hereby warrants to the first purchaser thereof, for a period of five (5) years after delivery, all new trailers, equipment, and other goods manufactured by Fruehauf Corporation (Manufacturer) to be free of defects in workmanship and material when properly maintained and used in normal service. "Normal service" means usage in the manner and for the purposes for which such goods are generally purchased and utilized ....

B. NO WARRANTY OF MERCHANTABILITY OR FITNESS FOR PURPOSE OTHER THAN SET FORTH ABOVE IS MADE BY SELLER.

&ast; &ast; &ast; &ast; &ast; &ast;

### LIMITATIONS ON SELLER'S LIABILITY

Seller and Customer agree that Seller shall have no liability for any cargo loss, loss of use or any other incidental or consequential damages arising out of this order or which are alleged to have been caused by any of the goods delivered hereunder.

Customer and Seller further agree that Customer's sole remedy for any defects in new goods delivered hereunder, whether Customer's claim arises under the warranty set forth above, or otherwise, shall be limited to repair or replacement at Seller's option, within five (5) years after delivery of such goods to the first purchaser, of any defective goods of which notice of the defect is given by Customer to Seller immediately after such defect is or ought to have been discovered, and which goods are returned to Seller within ten (10) days after Seller requests their return for inspection and/or repair or replacement.

II. Whether the court's jury instructions, taken as a whole, allowed the jury to determine intelligently the issues presented.

## DISCUSSION

### I. THE TRIAL COURT'S LEGAL CONCLUSIONS WERE CORRECT.

#### A. *Standard of review*

■ The substantive law of Washington governs this diversity case. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). We review the district court's determination and application of state law *de novo*. *Churchill v. F/V Fjord (In re McLinn)*, 739 F.2d 1395, 1399–1400 (9th Cir.1984) (en banc). "Our independent determination of state law should be based upon recognized sources that are available to the parties and that may be argued and contested before the district court as well as before the appellate court." *Id.* at 1400.

#### B. *The court correctly determined that Fruehauf's limited "repair or replace" remedy failed of its essential purpose.*

##### 1. *Introduction*

■ Fruehauf argues that the trial court erred in its rulings concerning the Washington version of Uniform Commercial Code ("UCC") § 2–719, Wash.Rev.Code § 62A.2–719.[2] The April 13, 1977 sales order contains a limitation-of-remedies clause which purports to limit the buyer's remedies to repair or replacement. Such a clause is valid only if that remedy fulfills its "essential purpose" when the buyer seeks to enforce it. Wash.Rev.Code § 62A.2–719(2). The trial court held that as a matter of law Fruehauf's limited remedy failed of its essential purpose. In its order denying a new trial, the court stated that "the facts show nothing but a callous disregard by [Fruehauf] for the purposes for which the. exclusive repair-or-replacement remedy was designed—to insure that [Fiorito] would acquire defect-free trucks." Fruehauf raises two objections to the trial court's decision on this issue: first, that this was a question for the jury; and second, that the court's substantive conclusion was incorrect.

##### 2. *The court correctly answered the question as a matter of law.*

■ Fruehauf baldly asserts that "failure of essential purpose is a question of fact for the jury." Under Washington law, however, a court commits error if it submits an issue to the jury without substantial evidence to support it. *See Hughey v. Winthrop Motor Co.*, 61 Wash.2d 227, 377 P.2d 640 (1963); *Shipp v. Curtis*, 318 F.2d 797 (9th Cir.1963) (applying Washington

---

**2.** Wash.Rev.Code § 62A.2–719 provides, in its entirety:

62A.2–719. Contractual modification or limitation of remedy

(1) Subject to the provisions of subsections (2) and (3) of this section and of the preceding section on liquidation and limitation of damages,

(a) the agreement may provide for remedies in addition to or in substitution for those provided in this Article and may limit or alter the measure of damages recoverable under this Article, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of non-conforming goods or parts; and

(b) resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy.

(2) Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this Title.

(3) Limitation of consequential damages for injury to the person in the case of goods purchased primarily for personal, family or household use or of any services related thereto is invalid unless it is proved that the limitation is not unconscionable. Limitation of remedy to repair or replacement of defective parts or non-conforming goods is invalid in sales of goods primarily for personal, family or household use unless the manufacturer or seller maintains or provides within this state facilities adequate to provide reasonable and expeditious performance of repair or replacement obligations.

Limitation of other consequential damages is valid unless it is established that the limitation is unconscionable.

law); *Bean v. Stephens,* 13 Wash.App. 364, 534 P.2d 1047 (1975). The testimony here showed that Fruehauf failed completely to honor its own repair or replace remedy, which represents a failure of essential purpose. The absence of substantial evidence to support Fruehauf's position meant that there was no issue of failure of essential purpose for the jury to decide. Therefore, the trial court was correct in not sending the question to the jury.

3. *The court's decision was correct on the merits.*

■ Fruehauf also makes the related argument that the court incorrectly decided, on the merits, that Fruehauf's limited remedy failed of its essential purpose. However, under any standard of review, the court's conclusion was correct. Denial of responsibility to repair is a failure of a limited remedy in the most basic sense.

In *Lidstrand v. Silvercrest Industries,* 28 Wash.App. 359, 365, 623 P.2d 710, 714 (1981), a Washington appeals court said that "[u]nreasonable delays in repairing or inability to repair a product where the manufacturer has promised such repairs causes a limited remedy to 'fail of its essential purpose' [within the meaning of § 62A.2–719(2) ]." *See also Marr Enterprises, Inc. v. Lewis Refrigeration Co.,* 556 F.2d 951, 955 (9th Cir.1977) (citing with approval cases which hold that a remedy fails of its essential purpose where "the seller fail[s] to replace or repair in a reasonably prompt and non-negligent manner").

Here, the court found that Fruehauf "arbitrarily decline[d] to made necessary repairs," and thus "arbitrarily and unreasonably declined to live up to its contractual promises." The court compared this case to *Soo Line Railroad Co. v. Fruehauf Corp.,* 547 F.2d 1365 (8th Cir.1977), which held that under the Minnesota version of the UCC (which contains language identical to § 62A.2–719(2)), "a limited remedy fails of its purpose whenever the seller fails to repair goods within a reasonable time." *Soo Line,* 547 F.2d at 1371 n. 7.

The evidence in the record overwhelmingly supports the trial court's conclusion. Fiorito first notified Fruehauf of problems with the dump bodies orally, shortly after delivery, but received no response. Fiorito wrote Fruehauf in October, 1977, setting out a "list of problems in the hydraulic, mechanical, and electrical systems." Fruehauf responded by letter on Nov. 4, 1977, stating that some of the complaints had to be inspected, that some had already been inspected, and suggesting ways in which the other problems could be corrected. When Fruehauf's service manager came to Fiorito's shop to inspect the bodies, he denied that the bodies were covered under warranty. This service manager admitted at trial that he is not an engineer, has no knowledge of the effects of hauling wet cement, and did not seek to gain any such knowledge.

In April, 1980, Fiorito again wrote to Fruehauf, stating that Fiorito had had to repair the bodies itself since Fruehauf had refused to do so. Fruehauf responded by letter dated May 27, 1980, stating that "we have lived up to our warranty obligations as stated on the reverse side of our sales order." In June, 1980, Fiorito wrote to Fruehauf, demanding a full refund or replacement of the bodies. A July 10, 1980 letter from Fruehauf to Fiorito stated that Fruehauf had concluded an "investigation" which "revealed that the product was misused." At trial, however, Fruehauf admitted that there was no such investigation.

Based on these facts, the district court correctly concluded that Fruehauf's limited "repair or replace" remedy had failed of its essential purpose as a matter of Washington law.

C. *The court correctly concluded that the failure of the limited remedy invalidated Fruehauf's disclaimer of consequential damages.*

Fruehauf next claims that the court erred in holding that under the circumstances of this case the failure of the limited remedy invalidated the disclaimer of consequential damages. The April, 1977 sales order contains a clause stating that

"seller shall have no liability for any ... consequential damages arising out of this order." The trial court concluded that under the facts of this case, the failure of the remedy rendered the consequential damages clause unenforceable.

Resolution of this issue requires an examination of the interrelationship of subsections (2) and (3) of Wash.Rev.Code § 62A.2–719. Subsection (2) states that "[w]here circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this Title." Consequential damages are authorized by Wash.Rev.Code § 62A.2–714(3) and 2–715(2). Subsection (3) of 2–719 states that "[c]onsequential damages may be limited or excluded unless the limitation or exclusion is unconscionable."

■ The parties and the trial court agree that the Washington courts have not spoken directly to this issue. In such a situation, our task is to use "our own best judgment in predicting how the state's highest court would decide the case." *Takahashi v. Loomis Armored Car Service,* 625 F.2d 314, 316 (9th Cir.1980). Washington courts have held that failure of the essential purpose of a limited remedy makes consequential damages available pursuant to § 62A.2–719(2). *See, e.g., Lidstrand v. Silvercrest Industries,* 28 Wash.App. 359, 623 P.2d 710 (1981). But no Washington court has been faced with a situation in which the seller has both a limited-remedy clause and a separate clause disclaiming consequential damages, then asserts that failure of the limited remedy does not affect the validity of the damages clause under § 62A.2–719(3). While each side makes a plausible argument on the issue, we prefer Fiorito's position, which was accepted by the court below.

■ Fruehauf claims that under subsection (3), the consequential damages clause is always valid unless unconscionable, even if the remedy clause fails of its essential purpose. It cites cases from the Third, Sixth, and Ninth Circuits in support of its broad proposition. Upon examination, however, the majority of the cases support Fiorito's position that each case and each contract must be judged on its own merits. For example, *S.M. Wilson & Co. v. Smith International, Inc.,* 587 F.2d 1363 (9th Cir. 1978), held that a separate consequential damages clause remained valid despite the failure of a remedy clause, but stated that its "holding is based upon the facts of this case ... and is not intended to establish that a consequential damage bar always survives a failure of the limited repair remedy. Each case must stand on its own facts." 587 F.2d at 1375–76. In *Wilson,* the court found that the parties had expressly bargained for both clauses and that the seller "did not ignore his obligation to repair; he was simply unable to perform it." 587 F.2d at 1375. Neither factor is present here. Similarly, the court in *Chatlos Systems v. National Cash Register Corp.,* 635 F.2d 1081 (3d Cir.1980), *cert. dismissed,* 457 U.S. 1112, 102 S.Ct. 2918, 73 L.Ed.2d 1323 (1982), while stating that it saw "no reason to hold, as a general proposition, that the failure of the limited remedy ..., without more, invalidates a wholly distinct term in the agreement excluding consequential damages," also recognized that "circumstances resulting in failure of performance [could] make[ ] it unconscionable to enforce the parties' allocation of risk." 635 F.2d at 1086–87.

Fruehauf relies most strongly on *Lewis Refrigeration v. Sawyer Fruit, Vegetable & Cold Storage Co.,* 709 F.2d 427 (6th Cir.1983), a diversity case decided under Washington law. There, the court reasoned that "section 2–719(3) is meant to allow freedom in excluding consequential damages unless a consumer is involved in the contract." 709 F.2d at 435. The court concluded that a consequential damage limitation should be enforced unless "unconscionable," even where a limited repair remedy failed of its essential purpose. 709 F.2d at 431, 435. We are not bound by *Lewis Refrigeration,* of course, and decline to follow it. The Washington courts, we believe, will opt for the case-by-case determination method of resolving this issue, as called for in *Wilson* and *Chatlos.* Judging

each case and each contract on its own merits will better allow courts to give effect to the parties' intentions regarding risk allocation and will lead less frequently to unjust results.

■ Judge McGovern's approach in this case is both logically sound and supported by the weight of authority. In its order denying Fruehauf's motion for a new trial, the trial court explained its reasoning, with which we agree:

> [The approach] that the Washington courts can be expected to follow, is to examine individually the provisions of each contract to ascertain the intent of the parties. Under the circumstances of each contract, are the exclusive-remedy and damage-exclusion terms separable elements of risk allocation, ... [o]r are they inseparable parts of a unitary package of risk-allocation? In the current case, it does not make sense to view the exclusive-remedy and consequential-damage provisions independently. The purpose of the parties in agreeing to this exclusive-remedy provision was to [i]nsure that the Plaintiff would not suffer from down time and other such consequential harms that follow from defective conditions in the trucks.... *It cannot be maintained that it was the parties' intention that Defendant be enabled to avoid all consequential liability for breach by first agreeing to an alternative remedy provision designed to avoid consequential harms, and then scuttling that alternative remedy through its recalcitrance in honoring the agreement.*

(Emphasis added.)

A number of cases interpreting other states' versions of the UCC support this reasoning. For example, in *Soo Line Railroad Co. v. Fruehauf Corp.*, 547 F.2d 1365, 1373 (8th Cir.1977), the Eighth Circuit said that "the fundamental intent of section 2–719(2) reflects that a remedial limitation's failure of essential purpose makes available all contractual remedies, including consequential damages authorized pursuant to sections 2–714 and 2–715." Similarly, the court in *Jones & McKnight Corp. v. Birdsboro Corp.*, 320 F.Supp. 39, 43–44

(N.D.Ill.1970), reasoned that a seller could not be allowed "to shelter itself behind one segment of the warranty when it has allegedly repudiated and ignored its very limited obligations under another segment of the same warranty."

The Official Comments to 2–719 also support the trial court's reasoning and conclusion. The Official Comments on the Uniform Commercial Code provide, under the heading "Purposes:"

> Under this section parties are left free to shape their remedies to their particular requirements and reasonable agreements limiting or modifying remedies are to be given effect.... [A]ny clause purporting to modify or limit the remedial provisions of this Article in an unconscionable manner is subject to deletion and in that event the remedies made available by this Article are applicable.... [U]nder subsection (2), where an apparently fair and reasonable clause because of circumstances fails in its purpose ... it must give way to the general remedy provisions of this Article.

The Official Washington Comments further explain that subsection 2 "relates to contractual arrangements which become oppressive by change of circumstances; [subsection 3], to contracts oppressive at inception." Here, the trial court correctly found that circumstances during performance rendered the damages limitation clause oppressive and invalid. The court did not believe that the clause was "oppressive at inception;" in fact, the trial judge stated in his order denying a new trial that the clause was "*not* unconscionable, because of the parties' relatively equal bargaining positions, sophistication, etc." (emphasis in original).

In summary, the trial court correctly held that in this case, the failure of the exclusive-remedy clause rendered the consequential-damages clause unenforceable.

## II. THE COURT'S JURY INSTRUCTIONS WERE PROPER.

### A. *Standard of review*

■ When reviewing jury instructions, this court must ask "whether, viewing the

**1316**

jury instructions as a whole, the trial judge gave adequate instructions on each element of the case to insure that the jury fully understood the issues." *Los Angeles Memorial Coliseum Comm'n v. N.F.L.,* 726 F.2d 1381, 1398 (9th Cir.1984). *Accord, Wellman v. Jellison,* 593 F.2d 876, 878 (9th Cir.1979) (question is whether "the instructions as a whole gave the jury enough guidance to intelligently determine the questions presented").

### B. *Analysis*

Fruehauf makes two attacks on the court's jury instructions: first, that the jury was improperly instructed on the issue of notice to seller of defects in the dump bodies; and second, that "the instructions as a whole were heavily weighted in the purchaser's favor and wholly failed to submit appellant's theory of the case to the jury." Neither of these contentions has merit.

■ First, Instruction No. 9 adequately advised the jury of Fiorito's duty to notify Fruehauf of defects before Fruehauf could be held responsible for breach of warranty. The instruction stated that the jury could not find breach unless it found that "Fruehauf failed to make repairs under the represented warranty *after due and proper notice* of the defects had been given by Fiorito to Fruehauf." (Emphasis added.) Fruehauf's objections to this instruction are overly technical.

■ Second, the court's instructions when viewed as a whole appear to be entirely proper. A party is not entitled to a jury instruction phrased exactly as it desires; rather, an instruction is proper if it adequately allows the party to argue its theory of the case to the jury. *See Sanderson v. Chapman,* 487 F.2d 264, 267 (9th Cir.1973). Fruehauf's objections to the jury instructions appear to be based on the erroneous belief that the court should have embraced its substantive theories. Nothing in the record or in the case law undercuts the trial court's view of its own instructions, which it explained in its order denying a new trial:

> [T]his case was not as complicated and difficult as [Fruehauf] tries to suggest.... [Fruehauf] was fully enabled to make a closing statement and to highlight such parts of the court's instructions as it saw fit. [Fruehauf's] theories are accurately summarized in the court's instructions, and [Fruehauf] was allowed to argue therefrom. That is all that fairness requires.

In summary, Fruehauf's contention that the jury instructions were improperly slanted in favor of Fiorito is unpersuasive.

## CONCLUSION

The trial court's challenged rulings and jury instructions were proper in all relevant respects.

The district court's judgment is AFFIRMED.