772 F.2d 543
 54 USLW 2186, 41 UCC Rep.Serv. 1561
 RRX INDUSTRIES, INC., a California corporation, dba Western
Pacific Reference Laboratory, Plaintiff-Appellee,
v.
LAB-CON, INC., a Pennsylvania corporation; Thomas Kelly and
Associates, Inc., a New Jersey corporation; and
Thomas E. Kelly, an individual,
Defendants-Appellants.
 No. 84-5573.
 United States Court of Appeals,
Ninth Circuit.
 Submitted May 6, 1985.*
Reassigned June 25, 1985.
Decided Sept. 24, 1985.
 
 Gregory Nicolaysen, West Los Angeles, Cal., for plaintiff-appellee.
 Irv M. Gross, Robinson, Wolas & Diamant, Los Angeles, Cal., Joseph T. Kelley, Jr., Kelley & Murphy and Margaret Connors, Philadelphia, Pa., for defendants-appellants.
 Appeal from the United States District Court for the Central District of California.
 Before WRIGHT, ALARCON and NORRIS, Circuit Judges.
 EUGENE A. WRIGHT, Circuit Judge.
 
 
 1
 Thomas E. Kelly and Associates (TEKA), Lab-Con, Inc., and Thomas E. Kelly (Kelly) appeal from the district court's judgment awarding RRX Industries, Inc. general and consequential damages for breach of contract. Appellants challenge the district court's fact findings on liability and contend that the award of consequential damages was improper. We affirm.
 
 
 2
 This action arises out of a computer software contract negotiated between RRX and TEKA. TEKA agreed to supply RRX with a software system for use in its medical laboratories. The contract obligated TEKA to correct any malfunctions or "bugs" that arose in the system, but limited TEKA's liability to the contract price.
 
 
 3
 TEKA began installing the software system in January 1981 and completed it in June 1981. Bugs appeared in them soon after installation. TEKA attempted to repair the bugs by telephone patching.[1] Subsequently, TEKA upgraded the system to make it compatible with more sophisticated hardware. The system, however, remained unreliable because defects continued to exist.
 
 
 4
 After contracting with RRX, Kelly formed Lab-Con, Inc. in order to market TEKA's software system. Lab-Con was a successor corporation to TEKA. TEKA assigned the RRX software contract to Lab-Con.
 
 
 5
 In September 1982, RRX instituted this diversity action against TEKA, Lab-Con, Kelly, and other defendants alleging breach of contract and fraud. Following a bench trial, the district court concluded that TEKA had materially breached the software contract. It found Lab-Con and Kelly individually liable and awarded RRX the amount paid under the contract, plus consequential damages.[2] TEKA, Lab-Con, and Kelly (collectively appellants) timely appeal the judgment and award of damages.
 
 ANALYSIS
 
 6
 Appellants challenge the district court's factual findings and conclusions of law. The factual findings will not be disturbed unless clearly erroneous. Anderson v. City of Bessemer, N.C., --- U.S. ----, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). Legal conclusions are subject to de novo review. United States v. McConney, 728 F.2d 1195, 1200 (9th Cir.) (en banc), cert. denied, --- U.S. ----, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).
 
 A. Credibility of Witnesses
 
 7
 Appellants first argue that the district court clearly erred by crediting the testimony of three of RRX's witnesses. They argue that the testimony was inconsistent and unreliable. This contention lacks merit.
 
 
 8
 We afford considerable deference to district court findings on credibility. See Anderson, 105 S.Ct. at 1512. The challenged testimony is not so inconsistent that a fact finder would not credit it. Further, there is corroborative testimony by other witnesses that supports the district court's findings.
 
 B. Piercing the Corporate Veil
 
 9
 1. Kelly. Appellants contend that the district court erroneously determined that Kelly was the alter ego of TEKA. The alter ego doctrine applies where (1) such a unity of interest and ownership exists that the personalities of the corporation and individual are no longer separate, and (2) an inequitable result will follow if the acts are treated as those of the corporation alone. Automotriz Del Golfo De California S.A. De C.V. v. Resnick, 47 Cal.2d 792, 796, 306 P.2d 1, 3 (1957); United States Fire Ins. Co. v. National Union Fire Ins. Co., 107 Cal.App.3d 456, 470, 165 Cal.Rptr. 726, 734 (1980).
 
 
 10
 The district court found the requisite unity of interest and ownership in Kelly's exertion of total control over TEKA. The record supports this finding. Kelly was the president and only officer, director, and stockholder of TEKA. TEKA had no Board of Directors and no employees. No TEKA stockholder meetings were ever held.
 
 
 11
 The district court also found that TEKA was under capitalized. An inequitable result may follow if the complained of acts are treated as those of an undercapitalized corporation. See Automotriz, 47 Cal.2d at 797, 306 P.2d at 4. Appellants contend that capitalization was adequate because TEKA had $8,000 in its corporate account. This fact alone, however, is not sufficient to defeat a finding of under-capitalization.
 
 
 12
 Appellants argue that the district court erroneously imposed liability because it did not find that Kelly acted in bad faith. A finding of bad faith, however, is not prerequisite to the application of the alter ego doctrine under California law. See, e.g., Automotriz, 47 Cal.2d at 797, 306 P.2d at 4. Thus, the district court properly found Kelly liable.
 
 
 13
 2. Lab-Con. Appellants also argue that the district court erred by imposing liability on Lab-Con. We disagree.
 
 
 14
 Kelly formed Lab-Con merely to market TEKA's computer software. Both corporations had essentially the same stockholders and directors. Further, TEKA transferred all of its software and licenses to Lab-Con for no consideration. Following the transfer, TEKA was simply an empty shell, which the district court properly disregarded. See Ray v. Alad Corp., 19 Cal.3d 22, 29, 136 Cal.Rptr. 574, 578, 560 P.2d 3, 7 (1977); Economy Refining & Service Co. v. Royal National Bank of New York, 20 Cal.App.3d 434, 439, 97 Cal.Rptr. 706, 710 (1971).
 
 C. Breach of Contract
 
 15
 Appellants contend that the district court's breach of contract finding was clearly erroneous because RRX also breached the contract. This contention lacks merit.
 
 
 16
 The contract obligated TEKA to timely install an operational software system, to repair malfunctions, and to train RRX employees. The record reflects that the software never functioned as intended. TEKA failed to correct adequately programming errors. Further, TEKA did not provide RRX employees with sufficient training. The evidence thus supports the district court's finding of a contract breach. See Interpetrol Bermuda Ltd. v. Kaiser Aluminum International Corp., 719 F.2d 992, 998 (9th Cir.1983).
 
 D. Consequential Damage Award
 
 17
 1. California Commercial Code. The district court relied on the California Commercial Code to award RRX consequential damages. Such reliance was proper only if the computer software system may be characterized as a "good" rather than a service.
 
 
 18
 The California Commercial Code defines a good as "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (Division 8) and things in action...." Cal.Com.Code Sec. 2105 (West 1964).
 
 
 19
 In determining whether a contract is one of sale or to provide services we look to the essence of the agreement. See Pittsburgh-Des Moines Steel Co. v. Brookhaven Manor Water Co., 532F.2d 572, 581 n. 6 (7th Cir.1976). When a sale predominates, incidental services provided do not alter the basic transaction. Id.; see also North Am. Leisure Corp. v. A & B Duplicators, Ltd., 468 F.2d 695, 697 (2d Cir.1972). Because software packages vary depending on the needs of the individual consumer, we apply a case-by-case analysis. See generally Note, Computer Programs as Goods Under the UCC, 77 Mich.L.Rev. (1979).
 
 
 20
 Here, the sales aspect of the transaction predominates. The employee training, repair services, and system upgrading were incidental to sale of the software package and did not defeat characterization of the system as a good. See Chatlos Systems, Inc. v. National Cash Register Corp., 479 F.Supp. 738 (D.N.J.1979), aff'd, 670 F.2d 1304 (3d Cir.1982).
 
 
 21
 2. Damage Limitation Clause. Under the Code, a plaintiff may pursue all of the remedies available for breach of contract if its exclusive or limited remedy fails of its essential purpose. Cal.Com.Code Sec. 2719(2) (West 1985 Supp.). Appellants argue that the award of consequential damages was nevertheless improper because the contract limited damages to the amount paid.
 
 
 22
 In S.M. Wilson & Co. v. Smith Int'l., Inc., 587 F.2d 1363 (9th Cir.1978), this court held that the failure of a repair remedy does not require permitting the recovery of consequential damages. Id. at 1375. The court reasoned that where parties agree to a limitation of damages provision, courts should not alter the bargained-for risk allocation unless a breach of contract is so fundamental that it causes a loss which is not part of that allocation. Id.
 
 
 23
 The district court's award of consequential damages is consistent with S.M. Wilson. The court concluded that "since the defendants were either unwilling or unable to provide a system that worked as represented, or to fix the 'bugs' in the software, these limited remedies failed of their essential purpose...." (emphasis added). This is a finding that both limited remedies failed of their essential purpose. The trial judge did not state that because the repair remedy failed, the limitation of damages provision should not be enforced.
 
 
 24
 The district court's choice of language and supporting authority creates an ambiguity.[3] However, it properly found the default of the seller so total and fundamental that its consequential damages limitation was expunged from the contract. See S.M. Wilson, 587 F.2d at 1375.
 
 
 25
 Two recent Ninth Circuit cases have addressed this issue. See Milgard Tempering, Inc. v. Selas Corp. of America, 761 F.2d 553 (9th Cir.1985); Fiorito Bros., Inc. v. Fruehauf Corp., 747 F.2d 1309 (9th Cir.1984). Although each applied Washington law, both looked to S.M. Wilson for guidance. California law does not significantly differ here.
 
 
 26
 The theme of all three is that "[e]ach case must stand on its own facts." S.M. Wilson, 587 F.2d at 1376, quoted in Fiorito, 747 F.2d at 1314. The facts here justify the result. Neither bad faith nor procedural unconscionability is necessary under California Commercial Code Sec. 2719(2).[4] It provides an independent limit when circumstances render a damages limitation clause oppressive and invalid. See Fiorito, 747 F.2d at 1314-15. The award of consequential damages was proper.
 
 E. Sanctions
 
 27
 RRX requests sanctions. We may impose attorney fees and single or double costs as sanctions for bringing a frivolous appeal. Fed.R.App.P. 38; 28 U.S.C. Sec. 1912; International Union of Bricklayers & Allied Craftsman Local Union No. 20 v. Martin Jaska, Inc., 752 F.2d 1401, 1406 (9th Cir.1985). An appeal is frivolous where the result is obvious or the appellants' arguments are utterly meritless. International Union, 752 F.2d at 1406.
 
 
 28
 The points raised by appellants on appeal are not wholly without merit. We deny the request for sanctions.
 
 
 29
 AFFIRMED.
 
 
 30
 NORRIS, Circuit Judge, concurring in part and dissenting in part,
 
 
 31
 I concur in the majority opinion except to the extent that it affirms the award of consequential and incidental damages by the district court. Given the plain language of the contract, the applicable California law, and the district court's findings of fact, I would reverse the award of damages to the extent it exceeds the actual amount RRX paid Lab-Con for the software.
 
 
 32
 Because the consequential damages issue is essentially a dispute over the meaning of the contract, I begin with the contract itself. The relevant provision reads:
 
 
 33
 "4. Kelly [now Lab-Con] warrants that the software shall be free of programming "bugs" for the term of the license, and that Kelly shall correct any such programming "bugs" (whether discovered by Kelly, User or others) at no cost to User. The liability of Kelly under this warranty, or under other warrant expressed or implied shall be limited in amount to $52,300.00 or such lesser sum that shall have actually been paid by User to Kelly pursuant to Paragraph 5 of this Agreement."
 
 
 34
 Thus, under the contract, Lab-Con undertakes to correct programming bugs, i.e. to "repair", but the parties agree that Lab-Con's liability for consequential damages for failure to correct the "bugs" shall in no event exceed the contract price. The bargain struck by the parties was that, while Lab-Con would be obligated to keep the software free of "bugs", there would be a precise "cap" on Lab-Con's liability.[1]
 
 
 35
 In this case I see no legitimate reason to ignore the bargain struck by the parties. This is precisely the type of risk that RRX agreed to bear. Lab-Con and RRX were both sophisticated commercial enterprises bargaining at arms length. The limitation on consequential damages, viewed ex ante, seems to be a reasonable accommodation of interests. There is no suggestion that Lab-Con acted in bad faith in failing to repair the "bugs". The district court found that Lab-Con's failure to make repairs was not deliberate but resulted from the loss of two key TEKA employees. Findings of Fact 35, No. CV-82-5375 (C.D.Cal. Dec. 12, 1983). There is no suggestion that the contract was unconscionable in any respect. Therefore, there is simply no good reason for the court to intrude on the bargaining process by shifting to Lab-Con the risk of RRX's loss in excess of the contract price.
 
 
 36
 This conclusion is fully supported by California law. The relevant provision of the California Commercial Code provides,
 
 
 37
 "(1) Subject to provisions of subdivisions (2) and (3) of this section and of the preceding section on liquidation and limitation of damages,
 
 
 38
 (a) The agreement may provide for remedies in addition to or in substitution for those provided under this division and may limit or alter the measure of damages recoverable under this division, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts; and
 
 
 39
 (b) Resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy.
 
 
 40
 (2) Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this code.
 
 
 41
 (3) Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is invalid unless it is proved that the limitation is not unconscionable. Limitation of consequential damages where the loss is commercial is valid unless it is proved that the limitation is unconscionable."
 
 
 42
 Cal.Comm.Code section 2719 (West Supp.1985). In essence, section 2719 allows the parties to a contract to provide for alternative remedies, or to limit the amount of damages that may be awarded, or to do both, as was done in the contract between RRX and Lab-Con.
 
 
 43
 The district court found that the repair remedy failed of its essential purpose. That conclusion was correct and unobjectionable. When TEKA proved to be incapable of keeping the software free of "bugs" for a year because of the loss of key personnel, the repair remedy did indeed fail. But the conclusion that the repair remedy failed of its essential purpose does not automatically lead to the further conclusion that the limitation of damages provision should not be enforced. The district court drew just such an invalid conclusion. Its key conclusion of law follows:
 
 
 44
 "22. While the License Agreement contains provisions that seek to limit plaintiff's remedy to merely the fixing of "bugs" and to limit defendants' liability to the amount paid under the contract, since the defendants' were either unwilling or unable to provide a system that worked as represented, or to fix the "bugs" in the software, these limited remedies failed of their essential purpose, and plaintiff is entitled to recover all of its damages."
 
 
 45
 Findings of Fact and Conclusions of Law 22, No. CV-82-5375 (C.D.Cal. Dec. 12, 1983) (citations omitted[2]). I believe that this conclusion is inaccurate as a statement of California law.[3]
 
 
 46
 When a remedy fails of its essential purpose, "remedy may be had as provided in this code." Cal.Comm.Code section 2719(2) (West Supp.1985). The Code provides several remedies for breach in regard to accepted goods. For example, section 2714(2) states the most common form of damages, namely, "the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted...." Section 2715(1) permits the buyer to recover incidental damages resulting from the seller's breach, such as expenses reasonably incurred in inspection, transportation, effecting cover and so on. Consequential damages are governed by section 2715(2), which holds the party in breach liable for "[a]ny loss resulting from general or particular requirements for which the seller at the time of contracting had reason to know...." Even if the seller did not consciously assume such a risk, he will be liable for consequential damages that are ascertainable and not avoidable by plaintiff.
 
 
 47
 The majority assumes that, once a contract clause fails of its essential purpose under section 2719(2), the buyer may resort to all of the remedies in the Code. This position ignores the fundamental goal of section 2719:
 
 
 48
 "[I]t is of the very essence of a sales contract that at least minimum adequate remedies be available. If the parties intend to conclude a contract for sale within this Article they must accept the legal consequence that there must be at least a fair quantum of remedy for breach of the obligations or duties outlined in the contract."
 
 
 49
 U.C.C. section 2-719, Official Comment 1, Cal.Comm.Code section 2719 at 682 (West 1964). Consequential damages go beyond "minimum adequate remedies." Under California law, a plaintiff can recover anticipated profits "where their nature and occurrence can be shown by evidence of reasonable reliability." Grupe v. Glick, 26 Cal.2d 680, 693, 160 P.2d 832, 840 (1945). This test is surprisingly easy to meet. See, e.g., A & M Produce Co. v. FMC Corp., 135 Cal.App.3d 473, 493-94, 186 Cal.Rptr. 114, 126-7 (1982) (company that had never raised tomatoes was entitled to recover lost profits due to crop damage by faulty machinery). Further, the Ninth Circuit has ruled that a plaintiff can recover damages for loss of good will. Consolidated Data Terminals v. Applied Digital Data Systems, 708 F.2d 385, 386 (9th Cir.1983).
 
 
 50
 It is obvious that the amount of consequential damages can exceed many times over the consideration tendered by a plaintiff. See, e.g., Lewis v. Mobil Oil Corp., 438 F.2d 500, 511 (8th Cir.1971) (plaintiff recovered lost profits for a two and a half year period from the supplier of lubricating oil for a hydraulic sawmill system, even though the price of the oil was only a fraction of the total lost profits). It is equally obvious that many sellers of goods or providers of services would find the risk of liability for unlimited consequential damages prohibitive. Assume, for example, that a Fortune 500 company offers a contract to a small company, such as Lab-Con. Although the contract could be profitable for the small company, the prospect of liability for the large company's lost profits or good will that might result from an interruption in operations caused by faulty software could be staggering. The stakes could be far too high for a small software company. Being much larger, and capable of diversifying its risk, the large company should be free to bargain for a lower price in exchange for its agreement to limit the seller's consequential damages.[4] Thus, the contract price may vary according to which party assumes the risk of consequential damages in excess of the limit. California law recognizes this business reality. Delta Airlines, Inc. v. Douglas Aircraft Co., 238 Cal.App.2d 95, 104-05, 47 Cal.Rptr. 518, 524 (1965), is a powerful example. Upholding an airplane manufacturer's exculpatory clause against the airline's claim for damages arising out of a plane accident, the court reasoned as follows:
 
 
 51
 "Under the contract before us, Delta (or its insurance carrier, if any) bears the risk in return for a purchase price acceptable to it; had the clause been removed, the risk would have fallen on Douglas (or its insurance carrier, if any), but in return for an increased price deemed adequate by it to compensate for the risk assumed. We can see no reason why Delta, having determined, as a matter of business judgment, that the price fixed now be allowed to shift the risk so assumed to Douglas, which had neither agreed to assume it nor been compensated for such assumption."
 
 
 52
 238 Cal.App.2d at 104-05, 47 Cal.Rptr. at 524 (footnote omitted). Douglas illustrates the point that a buyer may be willing to impose a limitation on damages in exchange for a lower price. But if the parties are not free to bargain for a limitation, the deal dies. Neither company benefits in such a scenario.
 
 
 53
 I am convinced that section 2719 addresses this concern. Its drafters stated that, "under subsection (2), where an apparently fair and reasonable clause because of circumstances fails in its purpose or operates to deprive either party of the substantial value of the bargain, it must give way to the general remedy provisions of this Article." U.C.C. section 2-719, Official Comment 1, Cal.Comm.Code section 719, at 682 (West 1964) (emphasis added). A limitation on consequential damages, unlike a limitation on damages for the difference between the value of what was received and what was expected, does no violence to the "substantial value of the bargain." A limitation on consequential damages becomes a part of the value of the bargain. Indeed, such a limitation might be necessary to create the bargain.
 
 
 54
 The uniqueness of consequential damages is reflected in the Code, which expressly contemplates that they may be limited. Limitations of consequential damages are governed by a separate subsection, section 2719(3).[5] This subsection enables parties to limit consequential damages "unless the limitation or exclusion is unconscionable." Although the U.C.C. does not attempt to define precisely what is or is not unconscionable, "[u]nconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." Williams v. Walker-Thomas Furniture Co., 350 F.2d 445, 449 (D.C.Cir.1965) (footnote omitted). Neither RRX nor the majority suggests that the limitation on consequential damages in this case is unconscionable in any respect.[6]
 
 
 55
 The most pertinent authority is S.M. Wilson & Co. v. Smith International Inc., 587 F.2d 1363 (9th Cir.1978) (applying California law), which I find extremely difficult to distinguish from the case before us. S.M. Wilson also involved the interpretation of California law with respect to an obligation to make repairs and a limitation on consequential damages. Our court enforced the limitation on damages provision notwithstanding the failure of the repair remedy. We concluded that "[t]he failure of the limited repair warranty to achieve its essential purpose makes available ... the remedies as 'may be had as provided in this code.' [But] [t]his does not mean ... that the bar to recovery of consequential damages should be eliminated." Id. at 1375. Thus, S.M. Wilson is clear authority that the failure of a repair remedy does not automatically result in the removal of the cap on consequential damages. The limitation was not found to be unconscionable in S.M. Wilson, and no one claims it is unconscionable in the case before us. Accordingly, I am unable to reconcile the majority's position with S.M. Wilson.[7]
 
 
 56
 The majority's entire attempt to distinguish S.M. Wilson consists of the following:
 
 
 57
 "The district court's award of consequential damages is consistent with S.M. Wilson. The court concluded that 'since the defendants were either unwilling or unable to provide a system that worked as represented, or to fix the 'bugs' in the software, these limited remedies failed of their essential purpose....' (emphasis added). This is a finding that both limited remedies failed of their essential purpose. The trial judge did not state that because the repair remedy failed, the limitation of damages provisions should not be enforced."
 
 
 58
 Supra at 547. I find this passage so unclear that I cannot decipher the legal principle upon which the attempt to distinguish S.M. Wilson is based.[8] Nor can I figure out the rationale for the majority's expansive reading of subsection (2) that allows RRX to receive more than the value of its bargain in the absence of a determination that the contract limitation was unconscionable. More importantly, the majority opinion creates confusion rather than guidance for parties contemplating a contract provision limiting consequential damages. The opinion provides no basis for predicting with confidence when a bargained-for cap on consequential damages will be judicially enforced.
 
 
 59
 The Official Comment to subsection (3) suggests that a central purpose of the subsection is to facilitate "the allocation of unknown or undeterminable risks." U.C.C. section 2-719, Official Comment 3, Cal.Comm.Code section 2719 at 682 (West 1964). Parties should be free to bargain. And yet, the majority's sweeping interpretation of subsection (2) undermines this freedom and provides parties no moorings in negotiating an allocation of risk by imposing limits on recoverable consequential damages.
 
 
 60
 I respectfully dissent.
 
 
 
 *
 Oral argument waived by appellants
 
 
 [1]
 Telephone patching is a procedure where a TEKA employee instructed an RRX employee by telephone how to correct the malfunctions
 
 
 [2]
 Appellants filed a counterclaim alleging breach of contract and fraud. Appellants presented no evidence in support of their counterclaim. The district court found that RRX did not breach its contract by failing to make its final payment on the purchase price because TEKA's breach excused its performance. The district court further found that RRX made no fraudulent representations to appellants
 
 
 [3]
 The majority of the cases relied upon by the district court were not helpful. See Beal v. General Motors Corp., 354 F.Supp. 423 (D.Del.1973); Riley v. Ford Motor Co., 442 F.2d 670 (5th Cir.1971); Jorgensen Co. v. Mark Construction, Inc., 56 Hawaii 466, 540 P.2d 978 (1975)
 
 
 [4]
 Judge Norris relies on the absence of unconscionability in contract formation for his position that consequential damages should not be awarded, citing Cal.Com.Code Sec. 2719(3). Unconscionability is irrelevant. Subsection (3) governs validity of a contract clause limiting consequential damages in the first instance. However, this case is governed by subsection (2), which deals with the enforcement of a valid limited damages provision after breach
 
 
 [1]
 Had the district court enforced the bargain struck by the parties, it would have awarded RRX consequential damages in the amount of $40,866.66, which is the contract amount RRX actually paid Lab Con under the contract. The court awarded RRX damages in the amount of $48,223.05. The difference between the two sums, $7,456.39, is the amount at issue
 
 
 [2]
 The district court cited a number of cases for the proposition expressed in conclusion 22, but only one of these, Tolstoy Construction Co. v. Minter, 78 Cal.App.3d 665, 673, 143 Cal.Rptr. 570, 574 (1978), was California authority. California law governs this action. But Tolstoy does not even deal with a limited remedies provision
 
 
 [3]
 Some jurisdictions may have a rule of law that makes limitation of damages provisions dependent upon the success of a repair remedy as a matter of law irrespective of the bargain struck by the parties. See, e.g., Jorgensen Co. v. Mark Construction, Inc., 56 Hawaii 466, 476-80, 540 P.2d 978, 986-87 (1975). This hostility to bargains limiting liability for consequential damages is simply not reflected in California law
 
 
 [4]
 I use the hypothetical of a Fortune 500 company and a small company such as Lab-Con for effect. The principle applies even when there is no significant disparity in the size of the buyer and seller
 
 
 [5]
 Sound statutory construction compels the conclusion that subsection (3) of Sec. 2-719 governs the issue of consequential damages. Absent the specific language of subsection (3), the general language of subsection (2) would seem to circumscribe the validity of consequential damages limitations. But the priority of specific over general provisions is a basic principle of statutory construction. See, e.g., Monte Vista Lodge v. Guardian Life Ins. Co. of America, 384 F.2d 126, 129 (9th Cir.1967), cert. denied, 390 U.S. 950, 88 S.Ct. 1041, 19 L.Ed.2d 1142 (1968). Therefore, subsection (3) controls the validity of consequential damages exclusions
 
 
 [6]
 Official Comment 1 to U.C.C. Sec. 2-719 explicitly states that "any clause purporting to modify or limit the remedial provisions of this Article in an unconscionable manner is subject to deletion and in that event the remedies made available by this Article are applicable as if the stricken clause had never existed." The negative implication is that the drafters of Sec. 2-719 did not envision any basis for invalidating limitations on consequential damages other than unconscionability. Further, California's version of the Code specifies that "[l]imitation of consequential damage where the loss is commercial is valid unless it is proved that the limitation is unconscionable." Cal.Comm.Code Sec. 2719 (West 1985)
 
 
 [7]
 In S.M. Wilson, we reviewed the contours of the bargain:
 "The issue remains whether the failure of the limited repair remedy to serve its essential purpose requires permitting the recovery of consequential damages as sections 2714(3) and 2715 permit. We hold it does not. In reaching this conclusion we are influenced heavily by the characteristics of the contract between Smith and Wilson.... Parties of relatively equal bargaining power negotiated an allocation of their risks of loss. Consequential damages were assigned to the buyer, Wilson. The machine was a complex piece of equipment designed for the buyer's purposes. The seller Smith did not ignore his obligation to repair; he simply was unable to perform it. This is not enough to require that the seller absorb losses the buyer plainly agreed to bear. Risk shifting is socially expensive and should not be undertaken in the absence of a good reason. An even better reason is required when to so shift is contrary to a contract freely negotiated. The default of the seller is not so total and fundamental as to require that its consequential damage limitation be expunged from the contract."
 587 F.2d at 1375. The S.M. Wilson opinion speaks in terms of upholding consequential damages limitation unless the default of the seller is "total and fundamental." Although the meaning of this phrase may be imprecise, the opinion emphasizes the existence of a contract freely negotiated between parties of equal bargaining power. Unequal bargaining power indicates "oppression," an element of unconscionability. A & M Produce Co. v. FMC Corp., 135 Cal.App.3d 473, 486, 186 Cal.Rptr. 114, 122 (1982). Thus, the discussion in S.M. Wilson supports the notion that a consequential damages exclusion is an independent provision, and Sec. 2719(3) makes it valid unless unconscionable. Such an approach is not novel. See Lewis Refrigeration Corp. v. Sawyer Fruit, Vegetable & Cold Storage Co., 709 F.2d 427, 434 (6th Cir.1983); Chatlos Systems v. National Cash Register Corp., 635 F.2d 1081, 1086 (3d Cir.1980).
 
 
 [8]
 I share the majority's belief that the district court's opinion creates ambiguity as to how the limitation of consequential damages failed of its essential purpose. But rather than offer a coherent explanation, the majority merely perpetuates the ambiguity