40 F.3d 1247
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
WRIGHT SCHUCHART, INC., Plaintiff-Appellant,
and
Federal Insurance Company, Third Party defendant Appellant,
and
Summit Construction Company, Plaintiff,
v.
COOPER INDUSTRIES, INC.,; Magnetek Inc., d/b/a "Louis
Allis," Defendants-Appellees.
WRIGHT SCHUCHART, INC., Plaintiff-Appellant,
and
Summit Construction Company, Plaintiff,
v.
COOPER INDUSTRIES, INC.,; Magnetek Inc., d/b/a "Louis
Allis," Defendants-Appellees,
Federal Insurance Company, Third Party defendant Appellant.
WRIGHT SCHUCHART, INC., d/b/a Summit Construction Company,
Plaintiff-Appellant,
v.
COOPER INDUSTRIES, INC.,; Magnetek Inc., d/b/a "Louis
Allis," Defendants-Appellees,
v.
FEDERAL INSURANCE COMPANY, Third Party defendant Appellant.
 Nos. 93-35778, 93-35946 and 93-36074.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 2, 1994.
Decided Nov. 8, 1994.
 
 Before: PREGERSON, CANBY & BOOCHEVER, CIRCUIT JUDGES:
 
 
 1
 MEMORANDUM*
 
 
 2
 Wright Schuchart, Inc. and Federal Insurance Co. (collectively, Wright) appeal the district court's grant of summary judgment in favor of Cooper Industries in this breach of contract action. They also appeal the award of attorneys' fees to Cooper. Wright contends that the district court erred when it concluded that all of the damages Wright seeks are consequential or incidental damages for which Wright may not recover under the terms of the contract. Wright also appeals the dismissal of its claims against Magnetek, Inc., Cooper's sub-supplier. We affirm in part, reverse in part, and remand with instructions.
 
 I.
 
 3
 The facts underlying this action are known to the parties and will not be repeated here. The predominant issue in the case is the proper characterization of Wright's alleged damages. We agree with Judges Kleinfeld and Holland that the bulk of the damages that Wright seeks are properly characterized as consequential, not direct.
 
 
 4
 Both the common law and the Uniform Commercial Code (U.C.C.) draw a distinction between direct damages and consequential or incidental damages. See Hadley v. Baxendale, 156 Eng.Rep. 145 (1854); U.C.C. Secs. 2-714, 2-715. The most common measure of direct damages for nonconforming goods is the difference in value between the goods as accepted and the goods as warranted. Another common measure, especially in the case of nonstandard, specially manufactured goods, is the total cost necessary to bring the goods into conformance--i.e. repair or replacement costs. These formulations are reflected in U.C.C. Sec. 2-714(2), which specifies the measure of damages for breach of warranty. Section 2-714(1) sets out a more generalized formulation of direct damages for "non-conformity of tender"[1] breaches. That section provides for the recovery of the loss resulting "in the ordinary course of events from the seller's breach."
 
 
 5
 Direct damages, which are recoverable as a matter of course, are to be contrasted with consequential damages. Consequential damages, although a consequence of the breach, do not flow directly from the breach. Their connection to the breach is more tenuous because they are occasioned or exacerbated by a buyer's particular requirements. Under the common law and the U.C.C., consequential damages are recoverable only when the seller knows or has reason to know of those requirements. See U.C.C. Sec. 2-715(2)(a). The U.C.C., however, allows sellers to protect themselves from liability for consequential damages by excluding recovery of those damages in their contracts. See U.C.C. Sec. 2-719(3). The Wright-Cooper contract excluded recovery for consequential or incidental damages from Cooper.[2]
 
 
 6
 Wright argues that the damages it alleges are direct, and therefore are recoverable under the contract even if the contract excludes consequential damages. With one exception, which we address below, we disagree. Nearly all of the damages Wright alleges are quite typical examples of consequential damages. See 67A Am.Jur.2d Sales Secs. 1310, 1335, 1341, 1345, 1348 (1985) (giving the following examples of consequential damages: lost profits; down or idle time; interest and finance charges; loss of use of goods; overhead, labor, equipment or other expenses incurred by buyer as a result of a seller's breach).
 
 
 7
 The following items of alleged damages found in the Peterson Report are representative of the damages Wright seeks: project supervisory personnel kept on payroll an extra 15 months; labor necessary to service and maintain equipment supporting the overall project; additional employee benefit costs (i.e. insurance, travel, rest breaks); provision of room and board to island personnel (46 man months); escalation in room and board costs that would not have occurred if project had been complete according to SWS schedule; additional electricity, telephone use, facsimile charges; opportunity losses from equipment tied up on the overall project; decline in value of assets due to harsh weather conditions on the island; costs incurred in demobilizing and mobilizing the island while Cooper redesigned the exciter control panels; loss of labor productivity and efficiency during delays and disruptions; loss of learning on the part of Wright employees due to disruption; additional site cleanup costs; additional subcontractor costs incurred due to change of schedule from the disruption; costs of preparing the claim against Cooper; and home office general and administrative costs. See Peterson Report, ER at 99-105. These damages are undeniably typical examples of consequential damages as that term is commonly understood.
 
 
 8
 We have reviewed the case law that Wright asserts supports its position that the above costs constitute direct, rather than consequential damages. With respect to this authority, our review of the cases reveals that they either: (1) do not actually support Wright's contention; (2) might be read to support the contention, but do not directly address the characterization of damages; or (3) are factually distinguishable. To the extent that the cases do support a conclusion that any of the above-mentioned damages are direct rather than consequential, we conclude that the Alaska Supreme Court would not find the cases to be persuasive.
 
 
 9
 We reject Wright's assertion that its claimed damages must be deemed to be direct because Wright otherwise could not be made whole. Wright bolsters this contention with the observation that all of the claimed damages obviously were foreseeable considering the nature of Wright's business. That damages are foreseeable, however, is immaterial to the question whether they are direct or consequential. Either type of damage must be foreseeable to be recoverable. Similarly, consequential damages always are necessary to make a buyer whole. The Code, however, allows sellers to bargain for an exclusion of consequential damages despite this fact. U.C.C. Sec. 2-719. The Code endorses a system in which parties privately allocate risk through the bargaining process. See 67A Am.Jur.2d Sales Sec. 905 (noting that the Code approves of consequential damages exclusions in commercial contracts unless unconscionable and commenting that findings of unconscionability are rare in commercial settings). Wright and Cooper struck just such a bargain.
 
 
 10
 Finally, we are not convinced that the Smith affidavit creates a genuine issue of material fact regarding whether Wright's alleged damages are direct or consequential in nature. In our view, the most generous possible reading of the Smith affidavit would establish a genuine issue only on the question whether Wright's damages were foreseeable to Cooper and therefore recoverable absent exclusion. The affidavit does not raise a genuine issue regarding the nature of the damages.
 
 
 11
 We agree with Wright, however, that any costs it incurred by directly contributing to the repair of defective Cooper equipment are recoverable as direct damages. See e.g., Rockwell Int'l Corp v. Westinghouse Elec. Corp., 756 F.Supp. 620, 624, 627 (D.Mass.1990). Wright alleged direct repair damages in the Peterson Report under the label "backcharges." See ER at 20, Peterson Report at I-9; ER at 123-25, Peterson Report at 117-119. A genuine issue of material fact therefore exists regarding whether Wright indeed incurred any direct repair expenses. Accordingly, we remand to the district court the limited inquiry of what, if any, direct repair costs were incurred by Wright.[3]
 
 II.
 
 12
 We reject Wright's argument that it is entitled to recover its alleged damages because the contract's exclusive remedy (repair or replacement) failed of its essential purpose. See U.C.C. Sec. 2-719(2). Judge Holland thoroughly and correctly analyzed our precedent in this area. See ER at 2068-90 (analyzing Milgard Tempering, Inc. v. Selas Corp. of America, 902 F.2d 703 (9th Cir.1990); RRX Industries, Inc. v. Lab-Con, Inc., 772 F.2d 543 (9th Cir.1985); Fiorito Bros., Inc. v. Fruehauf Corp., 747 F.2d 1309 (9th Cir.1984); S.M. Wilson & Co. v. Smith Int'l Inc., 587 F.2d 1363 (9th Cir.1978)). We agree with Judge Holland's conclusions that this is not a case where Wright's loss was "total and fundamental" or "oppressive" and that the loss was not beyond the bounds of the parties' bargained-for allocation of risk. Just as in Wilson, the parties to this contract were very sophisticated and of relatively equal bargaining power. After extensive negotiations, they entered into a contract for complex machinery designed for the buyer's purpose and both parties were assigned risks under the contract. Finally, Cooper did not entirely ignore its obligation to repair, and eventually did repair, the equipment. Cf. Fiorito Bros., 747 F.2d at 1313 (seller arbitrarily and unreasonably refused to keep its contractual promise); RRX, 772 F.2d at 546-47 (repairs were never successfully completed); Milgard Tempering, 902 F.2d at 706 (machine never made to work).
 
 III.
 
 13
 Wright asserts that it has viable claims against Magnetek for negligence and breach of implied warranties. We conclude that Wright does not have a claim for consequential damages against Magnetek, a remote supplier with which Wright was not in privity. We therefore affirm the dismissal of Wright's claims against Magnetek because none of the alleged damages that we have identified as possibly representing direct damages are alleged as costs incurred repairing Magnetek-supplied equipment.
 
 
 14
 With regard to Wright's negligence claim, we conclude that Smith v. Tyonek, 680 P.2d 1148 (Alaska 1984), is controlling. Lack of contractual privity precludes recovery for solely economic loss on a negligence theory. Id. at 1154. We reject Wright's assertion that Mattingly v. Sheldon Jackson College, 743 P.2d 356, 359-60 (Alaska 1987), controls. Mattingly was not a sale of goods case. Second, the defendant's conduct in Mattingly created a dangerous condition, which is the principle concern of tort law. The Alaska Supreme Court has seized upon the existence of a dangerous condition as the test for whether purely economic damages are recoverable in the product's liability context. See Pratt & Whitney Canada, Inc. v. Sheehan, 852 P.2d 1173, 1178-81 (Alaska 1993); Northern Power & Engineering Corp. v. Caterpillar Tractor, Co., 623 P.2d 324, 329-30 (Alaska 1981). In so doing, the Court noted: "[E]conomic loss, in the abstract, can be viewed as 'essentially the failure of the purchaser to receive the benefit of its bargain--traditionally the core concern of contract law ... [D]angerous circumstances that, in actuality, occasion some economic losses also implicate safety--the 'core concern' of tort law." 852 P.2d at 1179, quoting East River Steamship Corp v. Transamerica Delaval, Inc., 476 U.S. 858, 870 (1986).
 
 
 15
 We conclude that the Alaska Supreme Court would engage in the same inquiry of whether a defective product implicates safety concerns to determine whether purely economic loss is recoverable on a negligence theory in a sale of goods case. Thus, Mattingly and Smith are reconcilable. Because this case involves the sale of goods and does not involve a defect that created dangerous conditions, Smith is controlling.
 
 
 16
 With regard to Wright's breach of implied warranty claim, we are puzzled by Wright's attempt to rely on Morrow v. New Moon Homes, Inc., 548 P.2d 279 (Alaska 1976), for a proposition that the Alaska Supreme Court explicitly did not decide in that case. Morrow held only that direct damages may be recovered from a remote manufacturer on a breach of implied warranty theory, even if only purely economic damages are sought. Id. at 292. Moreover, Morrow is distinguishable in that the plaintiff in Morrow was an ordinary consumer, not a sophisticated party contracting for specially designed equipment. In the circumstances of this case, we conclude that the Alaska Supreme Court would be persuaded by our precedent establishing that a sophisticated purchaser cannot evade negotiated contractual damage limitations by pursuing a remote supplier when the contract provides for alternative remedies with respect to the equipment supplied by the remote supplier. See Airlift Int'l Inc. v. McDonnell Douglas Corp., 685 F.2d 267, 270 (9th Cir.1982); Aeronaves De Mexico, S.A. v. McDonnell Douglas Corp., 677 F.2d 771, 773 (9th Cir.1982); cf. Continental Airlines v. Goodyear Tire & Rubber Co., 819 F.2d 1519 (9th Cir.1987) (buyer can pursue remote supplier when limited warranty provisions did not extend to the particular defective product supplied by the remote supplier).
 
 IV.
 
 17
 We affirm the district court's summary judgment in favor of Cooper on Cooper's counterclaim for the reasons given in the district court's order on reconsideration filed January 29, 1993. ER at 2023-2027. Cooper's motion for summary judgment was properly supported by the Miller affidavit and its attachments. It was incumbent upon Wright to respond at that time with specific facts showing a genuine issue for trial. See Fed.R.Civ.P. 56(e). It was not incumbent upon the district court to comb through the record to determine whether Cooper had ever made representations inconsistent with those asserted in its motion for summary judgment. Wright's attempt to point out a triable issue now comes too late.
 
 V.
 
 18
 Finally, we reject Wright's assertion that the district court is precluded from awarding attorneys' fees to a breaching party. In United States v. Mountain States Constr., 588 F.2d 259, 263 (9th Cir.1978), we merely held that a district court does not abuse its discretion by refusing to award contractually-provided attorneys' fees to a breaching party. We have never suggested that a district court errs by awarding fees to a breaching party. In this case, the contract provides that fees are to be awarded to the prevailing party; it does not condition an award on the prevailing party's non-breaching status. Nevertheless, we vacate the district court's fee award in light of our remand on the issue of whether Wright sustained direct damages by contributing directly to the repair of Cooper equipment. The district court may then reassess fees according to the outcome of the further proceeding.
 
 VI.
 
 19
 In sum, we affirm the summary judgment in favor of Cooper in large part, remanding only for consideration of whether Wright can prove damages in the form of costs incurred directly repairing defective Cooper equipment. We affirm entirely the dismissal of Wright's claims against Magnetek and the summary judgment in favor of Cooper on its counterclaim. Finally, we vacate the district court's award of attorneys' fees in favor of Cooper, so that the court may reconsider its fee award in light of the ultimate outcome of all of the proceedings.
 
 
 20
 Magnetek is entitled to its full costs on appeal. Cooper is entitled to recover three-quarters of its costs on appeal. Each party shall bear its own attorney fees. Nos. 93-35778 & 93-35946: AFFIRMED in part, REVERSED in part, and REMANDED No. 93-36074: VACATED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3
 
 
 [1]
 Breach of warranty damages are just one form of nonconformity of tender. Section 2-714(1), therefore, sets out the more general formulation of direct or "proximate" damages
 
 
 [2]
 We reject Wright's contention that even if the bulk of its damages are consequential in nature, the contract did not exclude them. We agree with Judges Kleinfeld and Holland that the contract, when read as a whole, excludes consequential damages. See Supply Agreement p B(10). We do not agree that giving effect to p B(10) in this case renders p A(18) nugatory. That paragraph, at a minimum, still would carry meaning for situations involving indemnification by Cooper to Wright for injuries to third parties. The clause also might come into play if Cooper were seeking something other than purely economic damages. Finally, Wright's objection that giving effect to p B(10) leaves Wright with no remedy for Cooper's breaches of several contract provisions does not change our view. An obvious feature of damages limitations is that no remedy will be available for breaches that result only in damages that the limitation excludes
 
 
 [3]
 We do not agree that Wright can recover amounts it expended facilitating the repair. The cases that Wright cites in its brief do not support its contention that facilitation costs are recoverable. Wright therefore cannot recover costs such as those associated with the demobilization and mobilization of the island, for example. Only those damage allegations identified as backcharges in the Peterson Report are related directly enough to repairing defective Cooper equipment to be recoverable as direct damages, if proven