**SYNERGISTIC TECHNOLOGIES, INC., Plaintiff,**

v.

**IDB MOBILE COMMUNICATIONS, INC., et al., Defendants.**

Civ. A. No. 94–1880 (JHG).

United States District Court, District of Columbia.

Dec. 15, 1994.

---

Robert J. Flynn, Jr., Ronald C. VonNeumann, Arlington, VA, for Synergistic Technologies, Inc.

Jennifer Ann Albert, Arent, Fox, Kintner, Plotkin & Kahn, Washington, DC, for IDB

Mobile Communications, James Jancso, Richard Dobson.

Thomas H. Jenkins, III, Finnegan, Henderson, Farabow, Garrett & Dunner, Washington, DC, for Innovative Communications Technologies Inc.

## MEMORANDUM OPINION AND ORDER

JOYCE HENS GREEN, District Judge.

Plaintiff Synergistic Technologies, Inc. ("SynTech") brought this action seeking injunctive relief and damages stemming from defendant IDB Mobile Communications, Inc.'s ("IDB") alleged infringement of SynTech's copyrighted products. IDB countersued for, *inter alia*, breach of contract, conversion, trespass, and breach of warranty. Presently pending before the Court are dispositive motions by all parties to this action.[1] For the reasons set forth below, defendant IDB's motion for summary judgment is granted as to plaintiff's complaint, denied as to IDB's counterclaims, and granted as to IDB's request for declaratory judgment; plaintiff's motion is denied.

### I. Background

This case stems from a dispute over the development, installation, and use of three Digital Switching Systems ("DSS"), developed by SynTech for IDB pursuant to a 1992 Statement of Work negotiated by representatives of plaintiff and defendant. The purpose of the DSS is to enable IDB's Land Earth Stations ("LES") to interact with the International Maritime Satellite ("INMARSAT") system, thus allowing IDB to provide its customers with satellite voice and data communications services. IDB's customers are in the maritime and aviation industries. According to IDB, it is one of only two known providers of INMARSAT service in the United States.

The Statement of Work detailed the various types of equipment and services that SynTech was to provide, including testing, documentation, training, and maintenance of the system, and the provision of numerous items of computer hardware and computer software, among other items. *See* Statement of Work, § 4, Required Equipment and Services. Also included was a listing of phases and a timetable in which the work was to be performed, with the final phase, Phase 4, to be completed by March 31, 1994.

IDB made an initial 20 percent down payment on the DSS on January 4, 1993. Work on the DSS continued over the next 20 months, with SynTech proceeding with installation and testing of computer hardware and various versions of the computer software. SynTech invoiced IDB for various pieces of computer hardware, for software development, and for training IDB personnel, and IDB paid each invoice.

The pivotal events giving rise to this dispute occurred in August 1994. On August 11, 1994, the DSS malfunctioned, resulting in computer outages and a loss of satellite communications for approximately four hours. IDB's customers were forced to utilize IDB's competitor for satellite communications during the outage. In addition, on or about August 12, 1994, IDB discovered that the computer source code for the DSS had been deleted from IDB's computer system, as was a program which allowed IDB to make back-

---

1. The pending motions in this case include: (1) Motion to Dismiss by defendants James Jancso and Richard Dobson; (2) Motion by plaintiff to dismiss defendants' counterclaims pursuant to Fed.R.Civ.P. 12(b)(3) and 12(b)(6); (3) Motion by IDB for judgment on the pleadings or, in the alternative, for summary judgment; (4) Motion of plaintiff for summary judgment on IDB's counterclaims; (5) Motion of IDB to compel discovery; (6) Motion of defendant IDB to strike Gezen/Lambrechts affidavit; (7) Motion of defendant IDB to strike Gezen/Lambrechts counter statements; and (8) Motion of defendant IDB to strike transcript of tape.

In light of the Court's ruling this date, the Motion to Dismiss by defendants Jancso and Dobson is denied as moot. IDB's motions to strike the affidavits and counter statements of Gretchen Gezen and Beth Anne Lambrechts are denied. While it is true that many of the statements contained therein are conclusory, unsupported, and the documents do not state that they are based on personal knowledge, the Court is capable of determining which statements in the documents may be considered and which will not. *See Chambless v. Masters, Mates & Pilots Pension Plan*, 571 F.Supp. 1430, 1459 (S.D.N.Y. 1983).

IDB's Motion to Strike the Transcript of Portion of Jancso Tape is granted, for essentially the reasons expressed in IDB's motion.

up copies of computer files. The source code is of critical importance to the DSS system, in that the source code program is readable by humans and can be translated into object codes acceptable by a computer.[2] The deletion of the source code and the backup program placed IDB at risk of a system crash, because it deprived IDB of the capability to perform preventive maintenance or fix problems with the DSS.

Also on August 12, 1994, SynTech requested permission from IDB to change the passwords on all of the computers at IDB's earth stations. IDB refused permission. On or about that date, James Jancso, Vice President of IDB, telephoned Gretchen Gezen, Chairman of SynTech, to inform her that IDB was investigating the removal of the source code from IDB's computer system. Gezen offered to restore the source code. Gezen also asked that IDB make payment on an outstanding invoice. IDB made the payment; however, Gezen refused to restore the source code unless IDB signed a draft letter agreement stating that "[t]he ICON source code, source code listing and all ... documentation ... remains the property of SynTech and may not be modified, distributed or put out for 'work for hire' ".[3] *See* Complaint, Exh. G. Jancso refused to sign the letter; SynTech has not yet restored the source code.

Other events important to the background of this controversy are that in early August, 1994, IDB awarded a contract to another company to implement system improvements that would enable IDB to support calls requiring operator assistance from "INMARSAT M/B". SynTech had unsuccessfully bid on the contract. Finally, while the exact dates are uncertain, IDB hired another company, ICTI, to assist IDB in providing needed maintenance and repairs to the system following IDB's discovery that the source

code had been deleted. It is undisputed that ICTI logged on to the system during August 1994.

SynTech instituted this action on August 26, 1994, claiming that IDB infringed plaintiff's copyrighted software communications systems, known as ICON and IOC, by copying and converting the systems to defendants' use. Additionally, SynTech brought claims for unfair competition, fraud, fraudulent inducement, conversion, and civil RICO, all stemming from the negotiation, implementation, and use of the DSS, utilizing the ICON and IOC systems. IDB counterclaimed for breach of contract, tortious interference with existing and prospective business relations, theft/conversion/–trespass, violation of the Virginia Computer Crimes Act, unjust enrichment, breach of express warranties, and breach of implied warranties. The case initially was brought as an action for temporary restraining orders (both on the complaint and the counterclaims), but the parties jointly agreed to forego their requests for preliminary relief in favor of prompt final action on this case. Dispositive motions having been filed by all parties, and oral argument having taken place on November 16, 1994, this matter is ripe for consideration.

## II. *Analysis*

Summary judgment is appropriate when there is "no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "The inquiry performed is the threshold inquiry of determining whether there is a need for trial—whether, in other words, there are any genuine issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In considering

---

2. "Source code is the computer program code as the programmer writes it, using a particular programming language ... A program in source code must be changed into object code before the computer can execute it ... Object code is the representation of the program in machine language ... which the computer executes." David Bender, *Computer Law*, App. 4A–184 (1994).

3. The issue of whether restoration of the source code was conditioned on payment of the outstanding invoice is disputed by the parties. However, it is not disputed that Gezen offered to restore the code; it is also undisputed that Gezen conditioned restoration on IDB's signing a letter which stated unequivocally that the source code and documentation relating to the ICON system remained the property of SynTech.

a motion for summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. at 2513. At the same time, however, Rule 56 places a burden on the non-moving party to "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).[4]

In viewing a motion to dismiss, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his [or her] claim which would entitle him [or her] to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Kenneda v. United States,* 880 F.2d 1439, 1422 (D.C.Cir.1989). The factual allegations of the complaint must be presumed true and liberally construed in favor of plaintiff. *Kowal v. MCI Communications Corp.,* 16 F.3d 1271, 1276 (D.C.Cir. 1994); *see also* 5A Charles A. Wright, Arthur R. Miller, *Federal Practice and Procedure,* § 1357, at 304 (1990). The plaintiff is entitled to all favorable inferences which may be drawn from those allegations, *Scheuer v.*

*Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), "but the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint." *Kowal,* 16 F.3d at 1276.

## A. IDB's Motion for Summary Judgment on SynTech's Claims

### 1. The Copyright Claims

■ IDB seeks summary judgment on plaintiff's claims for copyright infringement[5], arguing that IDB is entitled to copy and adapt the software pursuant to § 117 of the Copyright Act. That section provides, in pertinent part:

> [I]t is not an infringement for the owner of a copy of a computer program to make or authorize the making of another copy or adaptation of that computer program provided:
>
> (1) that such new copy or adaptation is created as an essential step in the utilization of the computer program in conjunction with a machine and that it is used in no other manner, or
>
> (2) that such new copy or adaptation is for archival purposes only.

Section 101 of the Copyright Act defines a "computer program" as "a set of statements or instructions to be used directly or indirectly in a computer in order to bring about a certain result". 17 U.S.C. § 101.

SynTech has vigorously disputed IDB's claim that what is at issue is a computer

---

4. At the outset, it is observed that the Court's task of ascertaining whether and to what extent genuine issues of material fact exist in this case has been greatly complicated by plaintiff's failure to abide fully with Local Rule 108's requirement that the opposing party submit "a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, *which shall include references to the parts of the record relied on to support the statement.*" (Emphasis added). Plaintiff has attempted to meet its obligation under Local Rule 108 through the "Counter Statements" of Beth Anne Lambrechts and Gretchen Gezen. However, the Counter Statements fall short of meeting Rule 108's requirements, in that they often simply dispute IDB's statements without clearly explaining exactly how the facts are disputed; they frequently

fail to cite to the record supporting their allegations of fact; and many of the references which *were* cited were not supplied to the Court. While plaintiff has come forward with an abundance of legal argument in support of its claims, it has fallen short on its burden to cite to and explain the specific facts supporting its claims.

5. SynTech registered an Integrated Communications Network ("ICON") and International Operations Center ("IOC") with the Copyright Office on August 23, 1994, three days before it instituted this litigation; however, the copyright registration does not describe the subject of the copyrights. As a result, it is impossible to ascertain from the record exactly what the copyrights involve.

program; rather, SynTech argues, that the products in question are comprehensive communications *systems* designed to facilitate satellite communications from IDB's earth stations.

The Court finds that part of the Statement of Work unquestionably involved a computer program within the meaning of § 117 of the Copyright Act. Under the Statement of Work, SynTech agreed to provide a variety of items and services in connection with developing and installing the digital switching systems. It is clear that the Statement of Work concerned much more than a simple computer program. At the same time, a key element of the Statement of Work is the provision and delivery of computer software "to be used directly or indirectly in a computer in order to bring about a certain result"— namely, the ability of IDB's earth stations to facilitate satellite communications. 17 U.S.C. § 101. Accordingly, the Court finds that the software provided to IDB pursuant to the Statement of Work constitutes a computer "program" for purposes of § 117 of the Copyright Act.

■ In order to grant summary judgment on the ground suggested by defendant, the Court must also find that IDB is the "owner" of a copy of the program. The Statement of Work is not clear on the issue of transfer of ownership of the software. Both parties point to the language of § 4.4 of the Statement of Work to support their position that the document does (or does not) provide for transfer of ownership of the software.[6] If this matter turned solely on the Statement of Work, the Court would be unable to resolve the issue of ownership on summary judgment, given the dispute in interpretation of the Statement of Work between the parties.

However, this question is also governed by § 2–401 of the Uniform Commercial Code, D.C.Code Ann. § 28:2–401 (1991), which provides that "[u]nless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods."[7] The parties not having explicitly agreed otherwise, title to the hardware and to a copy of the software passed to IDB at the time of delivery of the goods. Accordingly, IDB is the owner of a copy of the computer program and is entitled to copy and adapt the program in the limited manner described in § 117.

■ The next question to resolve in SynTech's copyright infringement claim is whether IDB's alleged copying and adaptation of the program falls within § 117's permitted uses. Before the Court can reach this question, the Court must be satisfied that at least a genuine issue of material fact exists that IDB did, in fact, copy the software. *See* 17 U.S.C. § 106; 17 U.S.C. § 501. If the software has not been copied or distributed, then SynTech's claim for copyright infringement must fail.

SynTech alleged in its complaint that IDB has "infringed upon [SynTech's] copyright by gaining access to, copying, and converting to its own use plaintiff's ICONtm and IOCtm product through use of one or more 'back up tapes'". Complaint at ¶ 33. IDB categorically denies that it has ever made unauthorized copies of the source code; moreover, IDB asserts that the removal of the source code and a backup utility program from the software has deprived IDB of the ability to make such copies.

---

**6.** Section 4.4, entitled "Software", provides, in part: "SynTech will deliver all executable software developed for or forming part of the deliverable software package including software, firmware, and associated documentation."

**7.** The Uniform Commercial Code applies to contracts for the sale of goods. D.C.Code Ann. § 28:2–102 (1991). In a contract providing for both goods and services, such as the contract in this case, the Court must look to which aspect of the contract predominates. Here, more than three quarters of the monies paid by IDB to SynTech were for computer hardware, which

clearly constitute sales. The remaining monies were paid for computer software, including both the software product and its development. While services were plainly an important part of the contract, the Court finds that "goods" in the form of computer hardware and software predominate. Accordingly, the contract is governed by the U.C.C. *See Advent Systems Ltd. v. Unisys Corp.*, 925 F.2d 670 (3rd Cir.1991); *RRX Industries, Inc. v. Lab–Con, Inc.*, 772 F.2d 543 (9th Cir.1985); *Triangle Underwriters, Inc. v. Honeywell, Inc.*, 604 F.2d 737 (2nd Cir.1979).

Despite SynTech's strong allegations in its complaint, plaintiff has offered no intelligible proof that defendants have made any such "back up tapes" of the source code.[8] SynTech's entire evidence on this critical point consists of several statements in the "Counter Statement of Beth Anne Lambrechts", along with three pages purported to be logs of access to the DSS. The relevant statements include the following:

ICTI also had sources [sic] code access on [sic] *how else* would it be known that 'the source code was removed via the IOC Center? (¶ 29);

IDB has also testified to making complete "backup" of the system on August 12 (¶ 31);

From my review of the "operation logs", ICTI, has already modified the source code, IDB has done some of the same and distributed the product to ICTI. (¶ 32);

The logs I have reviewed demonstrates [sic] use of ICON(TM) and IOC(TM) and the related source code as complete pirate use of the two system [sic]—by this I mean a pirating of the "core ICON (TM) product", not merely use of the customized features. (¶ 42);

These logs make clear that after August 12, 1994, IDB (in conjunction with ICTI) *did* copy, modify, and obviously distribute to ICTI the source code which was stored on a backup tape. (¶ 43).

The "Counter Statement" of Gretchen Gezen makes allegations identical to those contained in ¶¶ 43–43 of the Lambrechts Counter Statement.

SynTech's claim of copyright infringement cannot survive on the basis of this evidence. It is true that in reviewing a motion for summary judgment, the evidence of the non-moving party is to be believed and all *reasonable* inferences drawn in its favor. Still, the Court cannot engage in pure speculation as to the meaning and significance of the evidence presented. SynTech has not explained how the (somewhat illegible) logs of system *use* prove *copyright infringement* on the part of IDB.[9] Plaintiff has simply submitted the logs along with conclusory statements by SynTech's principal officers about copyright infringement. In addition, plaintiff has offered no support for Lambrechts' statement that "IDB has also testified to making complete 'backup' of the system on August 12".

Rule 56 mandates that "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth *specific facts showing that there is a genuine issue for trial.*" Fed.R.Civ.P. 56(e). At the same time, it is manifest that the adverse party's response must be sufficiently clear for the Court to understand the basis for claiming that a genuine issue of fact exists. Because SynTech has not demonstrated that a genuine issue of material fact exists as to whether IDB infringed its copyright, IDB's motion for summary judgment on the copyright infringement claim is granted.[10]

Finally, SynTech's unfair competition claim, which is based entirely on the same acts alleged in SynTech's copyright infringement claim, cannot survive the dismissal of SynTech's copyright infringement claim. Accordingly, IDB's motion for summary judgment as to Count II is granted.

### 2. *The Fraud and Fraudulent Inducement Claims*

■ IDB has also moved for summary judgment on SynTech's claims for fraud and fraudulent inducement. To prevail on a claim of fraud, plaintiff must show: 1) a false representation of material fact; 2) knowledge of falsity; 3) "[i]ntent to mislead another into relying on the representation"; 4) reasonable reliance; and 5) injury as a result of reliance. *Williston on Contracts* (3d Ed.) at § 1487A.

---

**8.** IDB has admitted to making backup tapes of data *other* than the source code at various times, and SynTech has acknowledged that these back-up tapes are permitted.

**9.** SynTech's president, Beth Anne Lambrechts, admitted in her deposition that the Statement of Work grants IDB the right to use the system. Lambrechts Dep. at 189.

**10.** In view of this determination, the Court need not resolve and will not resolve the question of whether § 117 permits IDB to engage in the alleged conduct, namely, copying the source code and/or providing copies of the software and source code to a third party.

■ SynTech's claims for fraud and fraudulent inducement fall victim to the same failure that doomed SynTech's claim for copyright infringement—namely, a failure to provide evidence of the existence of a genuine issue of material fact. SynTech's entire factual evidence arguably relating to the fraud-related claims consists of two sentences contained in two affidavits:

1) The Joint Affidavit of Gretchen Gezen and Beth Anne Lambrechts, attached to SynTech's Opposition to IDB's Motion for Summary Judgment, makes reference at ¶ 10 to "guarantees IDB gave SynTech at 1828 L Street, N.W. in November and December, 1992, and, these are the representations that induced SynTech into the joint project covered by the SOW. The '2(c)' assurance made by IDB to SynTech is what induced SynTech to enter the joint work SOW".[11]

2) The Counter Statement of Beth Anne Lambrechts, at ¶ 5, asserts that "Paragraph 5 of IDB's Material Fact Statement is totally untrue and at complete odds with my deposition on the issues of promise against future adaptation, warranty of security and non-access by anyone including (IDB), and needed and recognized protection." The paragraph then cites to various pages of Lambrechts' deposition, none of which were provided by plaintiff with its motion for summary judgment. The paragraph also cites to several pages in the deposition of Richard Dobson of IDB, only one of which was submitted by plaintiff and which is unrelated to the issue of fraud.

Even viewing these statements, as the Court must at this summary judgment phase, in the light most favorable to plaintiff, it is evident that plaintiff has not met its burden of showing through evidence the existence of a genuine issue of material fact. The Court is unable to determine what, if any, statements made by defendants form the basis of plaintiff's claims of fraud and fraudulent inducement. There being no genuine issue of material fact in this record relating to any of the basic elements of a claim of fraud, summary judgment is granted for IDB on SynTech's claims of fraud and fraudulent inducement.

### 3. The Conversion Claim

SynTech states that its claim for conversion is based on "the fashion which core ICON (TM) was pirated by IDB and given [sic] ICTI constitutes conversion [sic] a program, which IDB did not own, in conjunction with ICTI, of SynTech's core ICON (TM) products." Pl.Opp. at 21. Because SynTech has not demonstrated a genuine issue of fact that its program was, in fact, given by IDB to ICTI (*see* the discussion on the copyright infringement claim, *supra* ), IDB's motion for summary judgment on this claim is granted.[12]

### 4. The RICO Claim

SynTech's RICO claim, like its other claims, is long on argument by counsel but falls far short on facts. The Court will not dwell on this unsubstantiated claim, except to say that no showing has been made by plaintiff through *evidence,* as opposed to allegations and argument, that the predicate elements to a RICO claim exist. To survive IDB's motion for summary judgment, SynTech must demonstrate a genuine issue of material fact relating to the existence of an enterprise and a pattern of racketeering activity. No such showing has been made; accordingly, IDB's motion is granted.

In sum, summary judgment is granted against plaintiff on the entirety of plaintiff's complaint. In light of this ruling, defendants' motion to dismiss James Jancso and Richard Dobson is denied as moot.

### B. Motions on IDB's Counterclaims

### 1. SynTech's Motion to Dismiss

SynTech has moved to dismiss IDB's counterclaims under Fed.R.Civ.P. 12(b)(3) and 12(b)(6). IDB has opposed SynTech's motion, and has itself moved for judgment on

---

11. The remainder of this paragraph refers to the audio tape transcript which the Court has stricken pursuant to IDB's motion to strike.

12. Insofar as this claim relates to IDB's use of the ICON system, SynTech's principal conceded in deposition testimony that use was authorized by the agreement of the parties.

the pleadings or, in the alternative, summary judgment on its claims for breach of contract, theft/conversion/trespass, the Virginia Computer Crimes Act, breach of express warranty, and breach of implied warranty. In addition, IDB seeks summary judgment on its request for declaratory relief. SynTech, in turn, has opposed IDB's motion for summary judgment.

The Court denies plaintiff's motion to dismiss under Fed.R.Civ.P. 12(b)(3) and 12(b)(6). Venue in this Court is clearly proper for IDB's counterclaims, in that they are based on the same transactions (the Statement of Work and subsequent events) that form the basis of plaintiff's suit. Moreover, the standard for a motion to dismiss is difficult to meet: the Court must find "beyond doubt that the plaintiff can prove *no* set of facts in support of his [or her] claim which would entitle him [or her] to relief," *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957), and all facts must be presumed true and liberally construed in favor of the non-moving party. The Court finds that, construing the facts contained in IDB's counterclaim as true, IDB has unquestionably alleged facts sufficient to bring its claims. Accordingly, plaintiff's motion to dismiss is denied.

### 2. *IDB's Motion for Summary Judgment on its Counterclaims*

#### a. *Breach of Contract*

■ Central to IDB's counterclaim for breach of contract is, obviously, the question of whether a valid contract existed between the parties. SynTech disputes IDB's claim that on December 22, 1992, SynTech and IDB entered into a contract for three DSS's for a price of $1.8 million. SynTech argues that the "Statement of Work" and accompanying "Statement of Understanding" is not a contract, but rather constitutes a "joint work product" utilizing the Statement of Work as a guide. Pl.Opp. at 7–8. Plaintiff further argues that any alleged contract is invalid under the Statute of Frauds, in that SynTech, the party charged with breach of contract, did not sign the contract.

IDB counterargues that the Statement of Work and Statement of Understanding meet the standard prerequisites of offer, acceptance and consideration. IDB further argues that the contract is not barred by the Statute of Frauds.

The Court finds that the Statement of Understanding and Statement of Work do indeed constitute a valid, enforceable contract between SynTech and IDB. The documents were developed over a series of meetings between SynTech and IDB representatives. The Statement of Understanding appears on SynTech letterhead and contains the signature of James Jancso, then Vice President of IDB, along with the signature of IDB's president.[13] The Statement of Understanding and Statement of Work contain a detailed description of equipment and services to be provided to IDB by SynTech for a price of $1.8 million. Indeed, the documents themselves in at least two places refer to the agreement as a "contract". *See* Statement of Understanding ("The cost of the *contract* is $1.8 million"); Statement of Work § 2 ("The *contract* includes the following scope of work"). While certainly not dispositive, the use of the word "contract" in the documents is clearly significant.

■ The Statute of Frauds does not concern the existence of a contract, but rather the enforceability of a contract. While as a general rule a contract for the sale of goods is not enforceable unless the agreement is in writing and signed by the party to be charged, D.C.Code Ann. § 28:2–201, the Statute of Frauds may be excused in a number of situations, including where the party against whom enforcement is sought has admitted the existence of the contract. D.C.Code Ann. § 28:2–201(3)(b); *see also*

---

**13.** The Statement of Understanding is in the form of a letter from Gretchen Gezen, Chief Operating Officer of SynTech. At the bottom of the letter, which is printed on SynTech letterhead, the signature line reads, in typeface, "Sincerely, Gretchen Gezen, Chief Operating Officer". There is no typed signature line over the typewritten name of Gretchen Gezen. There next appears the words "Accepted by:", followed by approximately two spaces, followed by a typed signature line over which is written the signature of James D. Jancso, then Vice President of IDB. Under the signature line is typed "James D. Jansco [sic], Date, Vice President".

*Hackney v. Morelite Const.*, 418 A.2d 1062, 1066 (D.C.App.1980). The record is replete with instances of SynTech acknowledging that an agreement, in the form of the Statement of Work and Statement of Understanding, existed between the parties. *See* Complaint ¶¶ 13, 14, 39, 58, 60; Pl. Reply Br. at 2 (referring to a "joint work project"); Deposition of Beth Anne Lambrechts at 78 (acknowledging existence of statement of work for the DSS, at a price of $1.8 million).

■ SynTech argues that these acknowledgements merely confirm that an *agreement*, or "joint work project" existed, but not a contract. This semantic argument is unpersuasive. SynTech has sufficiently admitted that a contract was formed between the parties; accordingly, the Statute of Frauds does not bar enforcement of the contract in this case. The substantial, indeed, almost complete performance by SynTech of its obligations under the contract provides even further justification for enforcing the contract on equitable grounds. *Id.*

■ IDB alleges that SynTech did not complete the contract; that the system has been plagued with problems; that SynTech has failed to deliver a number of contract items; and that SynTech "clandestinely deleted the source code files". Def.M. for Summary Judgment at 25. SynTech disputes that it has breached the contract; it alleges through affidavits that SynTech has remained able and willing to perform under the contract but that IDB has prevented performance by not allowing SynTech access to IDB's facilities.[14] *See* Lambrechts Counter Statement at ¶¶ 15, 18, 21–26; Gezen Counter Statement at 9.

Because there are significant factual disputes between the parties as to exactly what is required and what has transpired under the contract, it is not possible to grant summary judgment on the issue of breach of contract. *See* 10A, Miller & Kane, *Federal Practice and Procedure: Civil 2d*, § 2730.1.

Accordingly, IDB's motion for summary judgment on the breach of contract claim is denied.

**b. *Conversion and Violation of the Virginia Computer Crimes Act***

■ IDB has alleged that SynTech "clandestinely deleted" the source code from IDB's computers from a remote location, and that in so doing, SynTech unlawfully interfered with IDB's use of its property in violation of the common law and the Virginia Computer Crimes Act.[15] The Statement of Work explicitly provides that the source code is to be delivered to IDB, and plaintiff has admitted that IDB is authorized to utilize the DSS, which necessarily includes the computer software. It is SynTech's alleged interference with these rights that forms the basis of IDB's claims.

SynTech has not specifically denied that it deleted the source code. However, it has countered a key statement forming the predicate for IDB's conversion claim. The circumstantial evidence upon which IDB's conversion claim depends includes IDB's assertion that only SynTech knew the necessary passwords to access the system and delete the source code. However, SynTech's President, Beth Anne Lambrechts, has asserted that an IDB employee, Richard Dobson, was given a "super-user password" to the system and knew how to access the source code. Counter Statement at ¶ 29; Lambrechts Dep. at 252. This statement clearly implies that a party other than SynTech had the ability to delete the source code. Because SynTech has countered a critical element of IDB's circumstantial case of conversion, the Court finds that a genuine issue of material fact exists such that summary judgment cannot be granted on this claim. For the same reason, summary judgment cannot be granted on count four, the alleged violation of the Virginia Computer Crimes Act.

---

**14.** The issue of the source code deletion, a key part of IDB's claim for breach of contract, is discussed *infra*.

**15.** The Virginia Computer Crimes Act authorizes a cause of action against "[a]ny person who uses a computer or computer network without au-

thority and with the intent to ... [t]emporarily or permanently remove computer data, computer programs, or computer software from a computer or computer network." Va.Code Ann. § 18.2–152.4.

#### c. *IDB's Claims for Breach of Express and Implied Warranties*

The Statement of Work contains express warranties for both computer hardware and software. Section 2(c), entitled "Provision of a hardware and software warranty", states: "Hardware warranty will be for one (1) year after acceptance of the hardware. The software warranty will run for two (2) years after acceptance of said software." IDB alleges that SynTech breached the warranty in a number of respects: that a version of the software installed on July 26, 1994 did not operate reliably; that the deletion of the source code constitutes a breach of warranty with regard to the software; that a number of other "bugs" existed in the software at the time this lawsuit was commenced; and that SynTech has failed to deliver various items of equipment specified in the Statement of Work.

Through the Counter Statements of Beth Anne Lambrechts and Gretchen Gezen, SynTech has challenged a number of IDB's claims with regard to various alleged defects in the system. *See, e.g.,* Lambrechts Counter Statement at ¶¶ 15, 18, 21–26; Gezen Counter Statement at 9; Joint Aff. at 7–8. For example, SynTech's explanation for its failure to deliver certain pieces of equipment is that IDB has denied SynTech access to IDB's facilities. *Id.* Because conflicting versions of facts critical to IDB's claim of breach of warranty must be resolved, summary judgment is inappropriate on these claims.

#### d. *IDB's Claim for Declaratory Judgment*

Finally, IDB seeks summary judgment on its claim for declaratory judgment, in which IDB requests a declaration that IDB is the owner of at least a copy of the software in question, and that IDB has the right to enhance or adapt all DSS software. IDB unquestionably has the right to use the DSS, including the software and a copy of the source code. *See* Statement of Work ¶ 4.4; Lambrechts Dep. at 189. Moreover, IDB is the owner of a copy of the software, including the source code, and, pursuant to 17 U.S.C. § 117, is entitled to copy and adapt the software within the parameters set forth in § 117.

### III. *Conclusion*

For the reasons set forth above, it is

ORDERED that plaintiff's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(3) and 12(b)(6) is DENIED; it is

FURTHER ORDERED that defendant's motion for summary judgment as to plaintiff's complaint is GRANTED; it is

FURTHER ORDERED that IDB's motion for summary judgment on its own counterclaims is DENIED; it is

FURTHER ORDERED that IDB's request for declaratory judgment is GRANTED; it is

DECLARED that IDB is the owner of a copy of the software, including the source code, and, pursuant to 17 U.S.C. § 117, is entitled to copy and adapt the software within the parameters set forth in § 117.

The Court strongly urges the parties to meet *forthwith* in an effort to resolve the outstanding issues in this case in light of the ruling made today. Prompt resolution of this litigation will best serve both parties' business interests; protracted litigation over the remaining claims will not. The Court requests that the parties promptly advise the Court if a settlement is reached. Failing such resolution of this case by the parties, there will be a status conference on January 13, 1995, at 9:30 a.m., for the purpose of assessing the future progress of this case, and, if necessary, to schedule pre-trial and trial dates.

IT IS SO ORDERED.